TEXAS STATE TEACHERS ASSOCIATION ET AL. *v.*
GARLAND INDEPENDENT SCHOOL DISTRICT ET AL.

No. 87–1759.   Argued March 1, 1989—Decided March 28, 1989

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Robert H. Chanin* argued the cause for petitioners. With him on the briefs was *Jeremiah A. Collins.*

*Earl Luna* argued the cause for respondents. With him on the brief was *Mary Milford.*

JUSTICE O'CONNOR delivered the opinion of the Court.

We must decide today the proper standard for determining whether a party has "prevailed" in an action brought under certain civil rights statutes such that the party is eligible for an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988. This is an issue which has divided the Courts of Appeals both before and after our decision in *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983). The Courts of Appeals for the Fifth and Eleventh Circuits require that a party succeed on the "central issue" in the litigation and achieve the "primary relief sought" to be eligible for an award of attorney's fees under § 1988. See, *e. g., Simien* v. *San Antonio,* 809 F. 2d 255, 258 (CA5 1987); *Martin* v. *Heckler,* 773 F. 2d 1145, 1149 (CA11 1985) (en banc). Most of the other Federal Courts of Appeals have applied a less demanding standard, requiring only that a party succeed on a significant issue and receive some of the relief sought in the lawsuit to qualify for a fee award. See, *e. g., Gingras* v. *Lloyd,* 740 F. 2d 210, 212 (CA2 1984); *Lampher* v. *Zagel,* 755 F. 2d 99, 102 (CA7 1985); *Fast* v. *School Dist. of Ladue,* 728 F. 2d 1030, 1032–1033 (CA8 1984) (en banc); *Lummi Indian Tribe* v. *Oltman,* 720 F. 2d 1124, 1125 (CA9 1983); *Nephew* v. *Aurora,* 766 F. 2d 1464, 1466 (CA10 1985). In this case, the Court of Appeals for the Fifth Circuit applied the "central issue" test and concluded that petitioners here were not prevailing parties under § 1988. Because of the conflicting views in the Courts of Appeals, and because of the importance of the definition of the term "prevailing party" to the application of § 1988 and other federal fee shifting statutes, we granted certiorari. 488 U. S. 815 (1988).

## I

On March 31, 1981, petitioners, the Texas State Teachers Association, its local affiliate the Garland Education Association, and several individual members and employees of both organizations brought suit under 42 U. S. C. § 1983 against respondent Garland Independent School District and various school district officials. Petitioners' complaint alleged that the school district's policy of prohibiting communications by or with teachers during the schoolday concerning employee organizations violated petitioners' First and Fourteenth Amendment rights. In particular, petitioners focused their attack on the school district's Administrative Regulation 412, which prohibits employee organizations access to school facilities during school hours and proscribes the use of school mail and internal communications systems by employee organizations. The school district's regulations do permit employee organizations to meet with, or recruit, teachers on school premises before or after the schoolday "upon request and approval by the local school principal." Brief for Respondents 4–5.

On cross motions for summary judgment, the District Court rejected petitioners' claims in almost all respects. The court found that under *Perry Education Assn.* v. *Perry Local Educators' Assn.*, 460 U. S. 37 (1983), the prohibitions on union access to teachers themselves and to internal communication media during school hours were constitutional. App. to Pet. for Cert. 55a–57a. The District Court also rejected petitioners' claim that the school district's policies were unconstitutional in that they prohibited teachers' discussion or promotion of employee organizations among themselves during school hours. *Id.*, at 46a, n. 13. As to teacher discussion of employee organizations, the court found that even if some school officials interpreted the regulations to prohibit such speech, there had been no attempt to enforce such an interpretation. As to teacher-to-teacher speech promoting employee organizations, the court found that the record indicated that the school district did prohibit such speech, but

concluded that this prohibition was constitutional. *Ibid.*
The District Court did find for petitioners on one issue: it
held that the requirement of school principal approval of
teacher meetings with union representatives after school
hours was unconstitutionally vague in that no guidelines lim-
ited the discretion of the principal's decision to grant or deny
access to the campus. *Id.*, at 58a. The District Court found
that this issue was of "minor significance," since there was no
evidence in the record to indicate that school officials had
ever denied employee organizations the use of school prem-
ises during nonschool hours. *Id.*, at 58a, 60a, n. 26.

On appeal, the Court of Appeals for the Fifth Circuit af-
firmed in part, reversed in part, and remanded. *Texas State
Teachers Assn.* v. *Garland Independent School Dist.*, 777
F. 2d 1046 (1985). The Court of Appeals agreed with the
District Court that petitioners' claim that the First Amend-
ment required the school district to allow union repre-
sentatives access to school facilities during school hours was
foreclosed by our decision in *Perry.* The Court of Appeals
affirmed the entry of summary judgment for the school dis-
trict on this claim. *Id.*, at 1050–1053. The Court of Ap-
peals, however, disagreed with the District Court's analysis
of petitioners' claims relating to teacher-to-teacher discussion
of employee organizations during the schoolday. It found
that the prohibition of teacher speech promoting union activ-
ity during school hours was unconstitutional. *Id.*, at 1054.
It also found that there was a distinct possibility that the
school district would discipline teachers who engaged in *any*
discussion of employee organizations during the schoolday,
and that such a policy had a chilling effect on teachers' First
Amendment rights. Finally, the Court of Appeals held that
the prohibition on teacher use of internal mail and billboard
facilities to discuss employee organizations was unconstitu-
tional. The school district allowed teachers to use these facil-
ities for personal messages of all kinds, and the school district
had not shown that the discussion of union activity in these

media would be disruptive of its educative mission. *Id.*, at 1055. As to these claims, the Court of Appeals granted petitioners' motion for summary judgment. Respondents filed an appeal in this Court, and we summarily affirmed the judgment of the Court of Appeals. See *Garland Independent School Dist.* v. *Texas State Teachers Assn.*, 479 U. S. 801 (1986).

Petitioners then filed the instant application for an award of attorney's fees pursuant to 42 U. S. C. § 1988. The District Court found that under Fifth Circuit precedent petitioners here were not "prevailing parties" within the meaning of § 1988 and thus were ineligible for any fee award. App. to Pet. for Cert. 16a–20a. The court recognized that petitioners had achieved "partial success," but indicated that "[i]n this circuit the test for prevailing party status is whether the plaintiff prevailed on *the central issue* by acquiring the primary relief sought." *Id.*, at 17a, quoting *Simien* v. *San Antonio*, 809 F. 2d, at 258. Looking to "the background of the lawsuit" and the claims presented in petitioners' complaint, the District Court concluded that the central issue in this litigation was the constitutionality of the school district's policy of limiting employee organizations' access to teachers and school facilities during school hours. App. to Pet. for Cert. 19a. Because petitioners did not prevail on this issue, they had not carried the "central issue" in the lawsuit nor achieved "the primary relief sought" and were therefore precluded from recovering attorney's fees.

A divided panel of the Court of Appeals for the Fifth Circuit affirmed the District Court's judgment denying petitioners prevailing party status under § 1988. 837 F. 2d 190 (1988). The majority noted that the Fifth Circuit's "definition of 'prevailing party' is narrower than some of the other Federal appellate courts." *Id.*, at 192. Applying that definition here, the majority found that while petitioners "did succeed on significant secondary issues," the "main thrust" of their lawsuit was nonetheless the desire to gain access to

school campuses during school hours for outside represent-
atives of employee organizations. *Id.*, at 192–193. Thus,
under the "central issue" test, the District Court had
correctly concluded that petitioners were not prevailing
parties eligible for a fee award under § 1988. Judge Gold-
berg dissented. He argued that the "central issue" test for
determining prevailing party status was inconsistent with the
congressional purpose in enacting § 1988 and contrary to the
decisions of this Court. *Id.*, at 193–197. We now reverse
the judgment of the Court of Appeals.

## II

As amended, 42 U. S. C. § 1988, provides in pertinent part:

> "In any action or proceeding to enforce a provision of
> sections 1981, 1982, 1983, 1985, and 1986 of this title,
> title IX of Public Law 92–318, or title VI of the Civil
> Rights Act of 1964, the court, in its discretion, may allow
> the prevailing party, other than the United States, a
> reasonable attorney's fee as part of the costs."

In *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983), we dealt with
the application of the attorney's fee provision of § 1988 to
a situation much like the one before us today. Respondents
in *Hensley* were patients involuntarily confined in a state
mental hospital who brought a broad based challenge to the
constitutionality of a number of the institution's rules and
practices. In five of the six general areas where respond-
ents challenged the institution's practices, the District Court
found that conditions fell below those required by the Con-
stitution and granted respondents relief. Respondents then
requested a fee award pursuant to § 1988, and the District
Court "determined that respondents were prevailing parties
under 42 U. S. C. § 1988 even though they had not succeeded
on every claim." *Id.*, at 428. With one exception, the Dis-
trict Court awarded the respondents in *Hensley* the entire
"lodestar" figure, that is, the hours expended in litigation

multiplied by a reasonable hourly rate. The Court of Appeals affirmed the fee award.

In *Hensley* this Court sought to clarify "the proper standard for setting a fee award where the plaintiff has achieved only limited success." *Id.*, at 431. At the outset we noted that no fee award is permissible until the plaintiff has crossed the "statutory threshold" of prevailing party status. In this regard, the Court indicated that "[a] typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Id.*, at 433, quoting *Nadeau* v. *Helgemoe*, 581 F. 2d 275, 278–279 (CA1 1978). The Court then went on to establish certain principles to guide the discretion of the lower courts in setting fee awards in cases where plaintiffs have not achieved complete success. Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, we indicated that "[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley, supra*, at 435. In the more typical situation, where the plaintiff's claims arise out of a common core of facts, and involve related legal theories, the inquiry is more complex. In such a case, we indicated that "the most critical factor is the degree of success obtained." 461 U. S., at 436. We noted that in complex civil rights litigation, "the plaintiff often may succeed in identifying some unlawful practices or conditions," but that "the range of possible success is vast," and the achievement of prevailing party status alone "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Ibid.* We indicated that the district courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempt-

ing to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff. *Id.*, at 437. See also *Blanchard* v. *Bergeron*, 489 U. S. 87, 96 (1989).

We think it clear that the "central issue" test applied by the lower courts here is directly contrary to the thrust of our decision in *Hensley*. Although respondents are correct in pointing out that *Hensley* did not adopt one particular standard for determining prevailing party status, *Hensley* does indicate that the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.

Our decision in *Hensley* is consistent with congressional intent in this regard. Congress clearly contemplated that interim fee awards would be available "where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S. Rep. No. 94–1011, p. 5 (1976); see also H. R. Rep. No. 94–1558, p. 8 (1976). In discussing the availability of fees *pendente lite* under § 1988, we have indicated that such awards are proper where a party "has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Hanrahan* v. *Hampton*, 446 U. S. 754, 757 (1980). The incongruence of the "central issue" test in light of the clear congressional intent that interim fee awards be available to partially prevailing civil rights plaintiffs is readily apparent. In this case, our summary affirmance of the Court of Appeals' judgment for respondents on the union access issues and for petitioners on the teacher-to-teacher communication issues effectively ended the litigation. Because the Court of Appeals found that petitioners had not succeeded on what it viewed as the central issue in the suit, no fees were awarded. Yet, if petitioners' victory on the teacher-to-teacher communication issue had been only an interim one, with other issues remanded for further proceed-

ings in the District Court, petitioners would have been entitled to some fee award for their successful claims under § 1988. Congress cannot have meant "prevailing party" status to depend entirely on the timing of a request for fees: A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation.

Nor does the central issue test have much to recommend it from the viewpoint of judicial administration of § 1988 and other fee shifting provisions. By focusing on the subjective importance of an issue to the litigants, it asks a question which is almost impossible to answer. Is the "primary relief sought" in a disparate treatment action under Title VII reinstatement, backpay, or injunctive relief? This question, the answer to which appears to depend largely on the mental state of the parties, is wholly irrelevant to the purposes behind the fee shifting provisions, and promises to mire district courts entertaining fee applications in an inquiry which two commentators have described as "excruciating." See M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 15.11, p. 348 (1986). Creating such an unstable threshold to fee eligibility is sure to provoke prolonged litigation, thus deterring settlement of fee disputes and ensuring that the fee application will spawn a second litigation of significant dimension. In sum, the search for the "central" and "tangential" issues in the lawsuit, or for the "primary," as opposed to the "secondary," relief sought, much like the search for the golden fleece, distracts the district court from the primary purposes behind § 1988 and is essentially unhelpful in defining the term "prevailing party."

We think the language of *Nadeau* v. *Helgemoe*, quoted in our opinion in *Hensley*, adequately captures the inquiry which should be made in determining whether a civil rights plaintiff is a prevailing party within the meaning of § 1988. If the plaintiff has succeeded on "any significant issue in litigation which achieve[d] some of the benefit the parties

sought in bringing suit," the plaintiff has crossed the threshold to a fee award of some kind. *Nadeau*, 581 F. 2d, at 278–279. The floor in this regard is provided by our decision in *Hewitt* v. *Helms*, 482 U. S. 755 (1987). As we noted there, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.*, at 760. Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. *Id.*, at 760–761; *Rhodes* v. *Stewart*, 488 U. S. 1, 3–4 (1988). Beyond this absolute limitation, a technical victory may be so insignificant, and may be so near the situations addressed in *Hewitt* and *Rhodes*, as to be insufficient to support prevailing party status. For example, in the context of this litigation, the District Court found that the requirement that nonschool hour meetings be conducted only with prior approval from the local school principal was unconstitutionally vague. App. to Pet. for Cert. 58a. The District Court characterized this issue as "of minor significance" and noted that there was "no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours." *Id.*, at 60a, n. 26. If this had been petitioners' only success in the litigation, we think it clear that this alone would not have rendered them "prevailing parties" within the meaning of § 1988. Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied. See *Nadeau*, 581 F. 2d, at 279, n. 3; *New York City Unemployed and Welfare Council* v. *Brezenoff*, 742 F. 2d 718, 724, n. 4 (CA2 1984); *Chicano Police Officer's Assn.* v. *Stover*, 624 F. 2d 127, 131 (CA10 1980) ("Nuisance settlements, of course, should not give rise to a 'prevailing' plaintiff"). The touchstone of the prevailing party inquiry must be the material alteration of the legal re-

lationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*.

## III

Application of the principles enunciated above to the case at hand is not difficult. Petitioners here obtained a judgment vindicating the First Amendment rights of public employees in the workplace. Their success has materially altered the school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities. Petitioners have thus served the "private attorney general" role which Congress meant to promote in enacting § 1988. They prevailed on a significant issue in the litigation and have obtained some of the relief they sought and are thus "prevailing parties" within the meaning of § 1988. We therefore reverse the judgment of the Court of Appeals and remand this case for a determination of a reasonable attorney's fee consistent with the principles established by our decision in *Hensley* v. *Eckerhart*.

*It is so ordered.*