**MINNEAPOLIS STAR AND TRIBUNE COMPANY, Thomas Sweeney, WCCO Television, Inc., and Gary Feblowitz, Plaintiffs,**

**v.**

**UNITED STATES of America, Federal Bureau of Investigation, and Three (3) Unidentified Agents of the Federal Bureau of Investigation, Defendants.**

**No. 3–87 CIV 36.**

United States District Court,
D. Minnesota,
Third Division.

May 23, 1989.

---

## MEMORANDUM ORDER

ALSOP, Chief Judge.

This matter is before the court on the applications of four individual plaintiffs for an award of attorney's fees and litigation costs under the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa–6(f).[1] On October 1, 1988, this court awarded plaintiffs summary judgment on the issue of liability under the Privacy Protection Act, 42 U.S.C. § 2000aa et seq. By its consent order of October 7, 1988, the court awarded each individual plaintiff the sum of $750 as the minimum liquidated damages allowable under the PPA. Plaintiffs dismissed their claims for injunctive relief with prejudice.

### I. THE FEE APPLICATIONS

Plaintiffs Minneapolis Star and Tribune Company ("Star and Tribune") and Thomas Sweeney, through their attorneys Faegre and Benson ("Faegre"), seek an award of attorney's fees in the sum of $137,656.25 and expenses of litigation in the sum of $7,084.54, or a total award of $144,740.79. Plaintiffs WCCO Television, Inc. ("WCCO") and Gary Feblowitz through their attor-

---

**1.** Although defendant United States contests plaintiffs' "entitlement" to an award in addition to challenging the amount, the issue of entitlement was essentially resolved by the stipulation and consent order of October 7, 1988, and the Supreme Court by its opinion in *Texas State Teachers Ass'n v. Garland Ind. School District*, —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

neys Oppenheimer, Wolff and Donnelly ("Oppenheimer"), seek an award of attorney's fees in the sum of $55,939.50 and expenses of litigation in the sum of $8,053.38 or a total award of $63,992.88. The court is faced with the question of whether or not attorney's fees of $193,595.75 and litigation costs in the sum of $15,137.92, or a total award of $208,733.67, is "reasonable" in an action in which four plaintiffs share a combined damage award of $3,000 and dismiss their claim for injunctive relief.

## II. THE UNDERLYING ACTION

The action arises out of an episode which occurred on the evening of December 22, 1986. Plaintiff Feblowitz was employed by WCCO and plaintiff Sweeney by the Star and Tribune. On that evening, Feblowitz and Sweeney were videotaping and photographing a narcotics arrest at a convenience store in north Minneapolis. Their activity was conducted from the parking lot of the convenience store and an adjacent public sidewalk.

While Feblowitz and Sweeney were at the scene of the arrest, Special Agent Michael T. Elliot of the Federal Bureau of Investigation demanded that they turn over to him their film and videotape. The parties do not agree as to the exact language exchanged, but Elliot does concede that he threatened Feblowitz and Sweeney with incarceration if they did not turn over the film and videotape used by them. Elliot indicated to Feblowitz and Sweeney that there were undercover agents at the scene and their identities might be revealed through the photographs and videotape taken by them. In response, Sweeney offered to edit or disguise the undercover agents if Elliot would identify those individuals whose identity should be protected. Elliot stated that he could not reveal the identities of undercover officers to unauthorized individuals. The final result was Feblowitz and Sweeney being forced to surrender their photographic equipment to Elliot, including their videotape and film.

Elliot claims that on the evening in question he feared that the photographs and videotape could reveal the identity of the undercover agents which could endanger their lives. All defendants claim that Elliot and other officers had learned prior to December 22, 1986, that the suspect had allegedly hired someone to kill an undercover agent who participated in another undercover operation in which he was involved. This same undercover officer was at the scene of the arrest.

Shortly after the episode at the convenience store, the Office of the United States Attorney became involved in the controversy and plaintiffs' photographic equipment was returned to them undamaged within three hours after it was seized. Plaintiffs suffered no financial loss or delay in reporting information to the public due to the seizures. Plaintiff WCCO broadcast its videotape on its December 22, 1986, nighttime newscast. Plaintiff Star and Tribune determined that its film lacked news value and ultimately did not publish any of its photographs. The de minimis nature of the damages sustained by plaintiffs resulted in an award of the minimum liquidated damages allowable under the PPA, or $750 for each plaintiff.

## III. ENTITLEMENT

■ Plaintiffs entitlement to an award of attorney's fees and litigation costs is predicated upon the Privacy Protection Act, 42 U.S.C. § 2000aa–6(f) which provides as follows:

A person having a cause of action under this section shall be entitled to recover ... such reasonable attorney's fees and other litigation costs reasonably incurred as the court, in its discretion, may award.

There is a dearth of judicial authority interpreting this provision. In their submissions, all counsel make reference to cases interpreting entitlement and reasonableness of fee awards made pursuant to 42 U.S.C. § 1988. The court agrees that these cases provide substantial guidance, if not binding authority, for awards under the PPA.

All counsel refer the court to *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) as the authoritative pro-

nouncement of the Supreme Court of the United States on the appropriateness and reasonableness of awards of attorney's fees where a plaintiff prevails on some, but not all, of the claims originally asserted. The Supreme Court in *Hensley*, stated its mission as:

> We take this opportunity to clarify the proper relationship of the results obtained to an award of attorney's fees.

*Hensley*, 461 U.S. at 461, 103 S.Ct. at 1954. As might be expected, in arguing that all of the plaintiffs claims were "integrally related" so as to justify under *Hensley* an award in the full amount requested in the fee applications, plaintiffs quote those portions of the *Hensley* opinion that would appear to characterize the entire award sought as "reasonable." To the contrary, the defendants assert that under *Hensley* the unsuccessful claims of the plaintiffs must be treated as separate lawsuits and no fee may be awarded for services on the unsuccessful claims. In addition, defendants contend that the fee applications of both firms demonstrate overstaffing, unnecessary discovery, and excessive hourly rates.

## IV.  OVERSTAFFING

■  The following summary sets forth the staffing employed by two of the state's largest law firms to obtain a final recovery of $750 each for four separate clients:

|  | Faegre & Benson | Oppenheimer |
|---|---|---|
| Partners | 8 | 3 |
| Associate General Counsel of Client | 1 | |
| Associates | 1 | 3 |
| Summer Clerk | 1 | |
| Legal Assistants | 4 | 2 |
| Audio Visual Staff | 2 | |
|  | 17 | 8 |

The foregoing represents the engagement of sixteen attorneys, including eleven general partners and two senior litigators from each firm, six legal assistants, one summer clerk, and two audio visual personnel. It is difficult for this court to envision the justification or rationale that results in the expenditure of this array of legal resources in an action in which the facts are as straightforward as those involved in this litigation and where the legal issue involved the interpretation of a single statute.[2]

The episode giving rise to the action as herein described occurred during the course of a few moments, and was concluded by the agreement of the parties within hours after the initial encounter. The details of the event itself were virtually undisputed. The nine page complaint[3] contained only three counts, only one of which was actually litigated. The action was successfully concluded by way of motions for summary judgment. Nothing about the case justified the involvement of as many attorneys or staff support as that utilized by the Faegre firm. The staff utilization by the Oppenheimer firm perhaps more closely approaches what might marginally be deemed "reasonable" but certainly approaches, if it does not exceed, an appropriate maximum.

■  The parties disagree as to the appropriateness and necessity of the involve-

2. While it may be true as counsel for plaintiffs suggest that the court described the action as being one "replete with statutory and constitutional issues of first impression," the statutory issues were straightforward and the constitutional issues only raised as an adjunct to the statutory problem. Even as described, the issues as litigated did not require the expenditure of the vast array of legal talent here utilized.

3. Docket Entry # 8 contains an order permitting an amended complaint so as to name Michael T. Elliot as an additional defendant. The file does not contain such an amended complaint. Elliot's answer to "the amended complaint" at Docket Entry # 16 would make it appear that the "amended complaint" tracks the original complaint in every respect.

ment of in house counsel for the plaintiff Star and Tribune. It appears that in house counsel participated in all phases of the proceedings, including the preparation and signing of pleadings and motions, attendance at depositions, attendance at conferences, and attendance at all court hearings. Counsel for the Star and Tribune attempts to justify the appearance of in house counsel based upon her "expertise in first amendment law." For the most part, this litigation did not revolve around first amendment law but instead around the statutory issue regarding the application of the PPA. If corporate entities with in house counsel deem it in their best interest to engage private counsel to assert their claims and at the same time permit their in house attorney to participate in all phases of the litigation, it seems incongruous to expect the losing adversary to finance the services of both. With all due deference to the expertise of in house counsel for the Star and Tribune, the court cannot agree that her presence in all phases of the litigation was reasonably necessary to prosecute this action to a successful conclusion.

## V. OVER "LAWYERING"

■ Attempting to quantify the appropriate level of "lawyering" in this or any other case is admittedly something less than an exact science. In this instance, however, certain excesses are readily apparent.

A total of nineteen depositions were conducted in the action. Many of them were totally unnecessary for the issues which ultimately resolved the case. For the depositions that were taken, three plaintiffs' attorneys billed time to fifteen depositions, four plaintiffs' attorneys billed time to three depositions, and five plaintiffs' attorneys billed time to one deposition. The average combined plaintiffs' attorney's fees charged for each deposition exceeds $2,000 even though the average deposition was less than three hours in length. In house counsel for plaintiff Star and Tribune attended virtually every deposition. Twice the combined fees charged for a deposition exceeded $4,200. One such deposition was five hours in length and the

other was 2.5 hours in length. The court considers these examples of what it considers to be excess "lawyering" in this or any other proceedings.

In opposing the defendants' original motion to dismiss, eight plaintiffs' attorneys and one paralegal billed approximately 86 hours for preparing an opposition memorandum for a total fee request of $9,778. Nine plaintiffs attorneys, one paralegal, and one staff member billed approximately 300 hours for preparing briefs in opposition to defendants' motion for summary judgment and in support of plaintiffs' cross motion for summary judgment resulting in a fee request of $38,351.25. It seems inevitable that involving such a large number of attorneys in preparing the same memoranda must of necessity result in repetition and redundancy in its preparation, research, and review.

A large amount of time billed by plaintiffs' counsel is attributed to such ill-defined activities as "planning" and "strategy formulation," "settlement, discovery, and pretrial preparation," and miscellaneous "phone conferences," and "meetings" between plaintiffs' counsel. There is little indication that any of these activities were helpful or necessary to an ultimate resolution of the case.

The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983) cautioned that "the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Without attempting to define the quantity of "lawyering" that would be necessary and appropriate in an action that progressed as this one did, based upon 21 years of experience at the bar and 15 years experience on the bench, the court is compelled to conclude without fear of contradiction that this case was "over lawyered" by counsel for plaintiffs.

## VI. HOURLY RATES

■ Defendants complain that seven of plaintiffs' attorneys have billed time in this

case at rates ranging from $155 to $195 per hour, which is apparently their normal billing rate. Defendants point out that reasonableness is determined not by a normal billing rate but instead, by the rate that is generally charged in the community for similar services. In their reply memoranda, plaintiffs' counsel have adequately documented that the hourly rates charged by Faegre and Oppenheimer in connection with this litigation are within the range customarily charged by large Twin City law firms. Accordingly, the court will accept as reasonable for the purpose of this proceedings the hourly billing rates set forth in the fee petitions of both Faegre and Benson and Oppenheimer.[4]

## VII. SERVICES FOR UNSUCCESSFUL CLAIMS

■ The complaint in this action alleged three separate counts or causes of action as follows:

I. A claim against United States of America and the Federal Bureau of Investigation under the Privacy Protection Act, 42 U.S.C. § 2000aa.

II. A "Bivens claim" against unidentified FBI agents and ultimately Agent Michael T. Elliot, alleging violations of plaintiffs' rights under the first and fourth amendments to the United States Constitution.

III. State common law claims for abuse of legal process and conversion on behalf of plaintiff Sweeney as against unidentified FBI agents and ultimately Agent Michael T. Elliot.

State common law claims for abuse of legal process and conversion on behalf of plaintiffs Feblowitz and WCCO against unidentified FBI agents and ultimately Agent Michael T. Elliot.

Plaintiffs sought the following relief:

A. Under the Privacy Protection Act, money damages of not less than $250,000;

punitive damages and attorney's fees and costs.

B. Under the Bivens claim, money damages of not less than $250,000; punitive damages; costs and disbursements; and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

C. Under the state common law claims, money damages of not less than $250,000 and punitive damages pursuant to Minn. Stat. § 549.20.

D. A declaratory judgment under 28 U.S.C. § 2201 declaring the acts of the defendants to be unlawful and in violation of plaintiffs' constitutional and statutory rights and a further declaration that plaintiff Sweeney has a constitutional right to gather news from a public location without government censorship or interference.

E. For an order directing the defendants to fulfill their duties to plaintiffs including an order requiring an administrative inquiry pursuant to 42 U.S.C. § 2000aa–6(g).

F. For permanent injunctive relief.

G. For such other relief as would be just and equitable.

As previously indicated, the action was resolved by an award of $750 to each plaintiff, a dismissal with prejudice of the request for an injunction, and a dismissal of the remainder of the action.

In *Hensley* 461 U.S. 424, 103 S.Ct. at 1933, the Supreme Court addressed the question as to what extent a partially prevailing plaintiff may recover attorney's fees for legal services on unsuccessful claims. All parties in this case cite *Hensley* as support for their proposition that the unsuccessful claims in this action were or were not "integrally related" to the PPA claim upon which plaintiffs prevailed. The plaintiffs argue that because all of the legal and factual issues in the litigation are integrally related, all of the requested fees, costs, and disbursements are properly re-

---

**4.** The court feels compelled to compare hourly rates ranging from $75 per hour for first year associates to $195 per hour for senior litigators with the $60 per hour maximum permitted under the Criminal Justice Act (18 U.S.C. § 3006A(d)(1)): the $75 per hour allowed under the Equal Access to Justice Act; 28 U.S.C. § 2412(d)(2)(A); or $45 per hour for Article III judges; *see Burke v. Keenum,* 1989 WL 14681 1989 U.S.Dist. Lexis 1666 (Feb. 21, 1989).

coverable under the PPA. The court does not agree.

This case was resolved on a narrow statutory interpretation of the application of the PPA to the fact pattern presented and the appropriate application of the so-called "life-in-danger exception" to the PPA. Following the court's order of August 13, 1987, the case was limited to the application of the PPA. The PPA expressly provides that independent claims may not be asserted personally against federal officials for any conduct giving rise to a PPA claim. *See* 42 U.S.C. § 2000aa–6(d). The so-called "Bivens" action in Count II was totally separate from the PPA as set forth in Count I of the complaint. It was a separate and distinct issue of law and was against different parties. The claim for injunctive relief was never seriously pursued albeit perhaps at the court's urging in light of the uniqueness of the fact pattern presented.

## VIII. WHAT FEE IS "REASONABLE"

■■■ Having concluded that this action has been overstaffed, over lawyered, and resulted in recovery of only minimal damage on a discreet single claim, the court is now faced with the more difficult task of exercising its discretion in arriving at a "reasonable fee." Guidance can again be obtained from the *Hensley* opinion. In commenting upon those cases where the plaintiff has achieved only partial or limited success, the Supreme Court describes the most critical factor as the "degree of success obtained."

That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

This court chooses to accept the latter procedure in arranging an ultimate award in this instance. So far as the record discloses, Agent Elliot's seizure of plaintiffs' film and photographic equipment was an isolated incident which had never occurred before and was unlikely to occur again. The damage award is obviously nominal and the case resulted in no precedential pronouncement on first or fourth amendment issues of general application. The controversy could well have been resolved with an apology and a handshake.

Responsive to the invitation in *Hensley* to "simply reduce the award to account for limited success" the court will award attorney's fees as hereinafter set forth. The award to Faegre as counsel for Star and Tribune and Sweeney represents one-third of the amount requested in their fee application. Because the court's concerns relate to a greater degree with the services of the Faegre firm than those of Oppenheimer, the award to Oppenheimer as counsel for WCCO and Feblowitz represents one-half of the amount requested in their fee application. The court finds those amounts to be "reasonable" under 42 U.S.C. § 2000aa–6(f).

|  | Faegre & Benson | Oppenheimer | Total |
|---|---|---|---|
| Fees | $45,885.42 | $27,969.75 | $73,855.17 |
| Expenses | 2,361.51 | 4,026.69 | 6,388.20 |
| TOTAL | $48,246.93 | $31,996.44 | $80,243.37 |

To a layman, and indeed to this court, it is difficult to perceive the logic of expending as fees for attorneys in excess of $193,-000 and costs in excess of $15,000 knowing that the actual provable damages could not exceed the statutory minimum of $750 per plaintiff. The pursuit of litigation with these economic ramifications may be appealing to the legal profession, but its continuous pursuit by private litigants would in all events result in their financial demise. It is no wonder that the average business

person or citizen can no longer afford to resort to the courts and engage in litigation to resolve private disputes.

The court is not unmindful of the fact that two of the plaintiffs are in the business of gathering and disseminating news and are publishers whose conduct is entitled to First Amendment protection. But the action was pursued not on the basis of the First Amendment but of the Privacy Protection Act and even on the narrowest of issues of that statutory scheme. It appears to the court that these plaintiffs, in presenting the application in the form here as presented, have failed to recognize the interests of society in general in the cost of litigation and the hazard of overzealously asserting claims that do not warrant such intensive effort. In private litigation, both counsel and client must equate the reasonableness of the endeavor both to the client and to the law firm in terms of the reasonable expectations of recovery. They both must appraise the effort not only in terms of principle but also in terms of the economics of litigation. No less, indeed a greater, standard of economic rationality must apply in those cases in which claimants will seek ultimate recovery for fees and disbursements from the public treasury.

Based on the record as presently constituted, written submissions of counsel, and the above discussion,

IT IS ORDERED That the defendant United States of America pay the sum of $48,246.93 to the law firm of Faegre and Benson as counsel for plaintiffs Minneapolis Star and Tribune and Thomas Sweeney, and the sum of $31,996.44 to the law firm of Oppenheimer, Wolff & Donnelly as counsel for the plaintiffs WCCO Television and Gary Feblowitz. Such sums shall be paid within thirty (30) days from the date of this order.