**MR. L. & MRS. L. on Behalf of their son, MATTHEW L.**

v.

**WOONSOCKET EDUCATION DEPT., et al.**

**Civ. A. No. 91–0455 P.**

United States District Court,
D. Rhode Island.

May 21, 1992.

Francis J. Harney, Boston, Mass., James S. Lawrence, Warwick, R.I., for plaintiff.

Joseph F. Dugan, Ackerman & Gariepy, Woonsocket, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiffs in this matter filed suit against defendants under the Education for the Handicapped Act ("EHA"), 20 U.S.C. § 1401 *et seq.*, seeking a total of $52,508.76 in attorneys' fees, costs and expenses for allegedly prevailing at an administrative hearing held pursuant to 20 U.S.C. § 1415(b)(2). The parties subsequently filed cross-motions for summary judgment. For the reasons which follow, defendants' summary judgment motion is granted.

### I.

Pursuant to his pediatrician's request, a multidisciplinary team at the Woonsocket School District began evaluating Matthew L. for possible psychological, behavioral, and/or learning disabilities in the Spring of 1987. Matthew's most outwardly apparent

problem involved his behavior; he was subject to outbursts, and he fought with other children. Following a full core evaluation in October 1988, the multidisciplinary team diagnosed Matthew as behaviorally disordered. Further evaluation resulted in an additional finding that Matthew suffered a written language deficit (a specific learning disability). A series of individualized education programs ("IEPs") addressing Matthew's special educational needs were formulated, approved by Matthew's parents, and implemented by the Woonsocket School District. While Matthew's behavior problems seemed to improve for some period of time, by fifth grade he was still experiencing problems both with his behavior and with his ability to complete classwork.

In November–December 1989, at the behest of Matthew's parents, Dr. Steven Imber performed an independent evaluation of Matthew. Plaintiffs then requested a due process hearing to determine whether Matthew's right to a free, appropriate public education had been violated by defendants. A fifty-two and a half hour-long hearing was held in the Spring of 1990. Plaintiffs' primary concern was that defendants had wrongly diagnosed Matthew as being primarily behaviorally disordered instead of learning disabled. The hearing officer found that "[t]he District has followed all the substantive and procedural rules required by federal and state regulations, and the District has not violated either the Student's or the Parents' rights embodied in [20 U.S.C. § 1401 et seq.]." Decision and Order of Hearing Officer Marvin A. Brill, July 30, 1990, at 8. Defendants were, however, ordered to reimburse plaintiffs in the amount of $525.00, a portion of the cost of Dr. Imber's evaluation of Matthew.

On August 3, 1990, Matthew's parents filed an appeal of the hearing officer's decision. Review Officer James F. McGarry subsequently conducted an independent review of the entire record related to the hearing, including twelve volumes of transcripts and eighty-three exhibits, the hearing officer's written decision, and seven filings of arguments from the parties. On September 9, 1990, Review Officer McGarry released his decision. Plaintiffs contend they were "prevailing parties" under this decision and are therefore entitled to attorneys' fees, costs, and expenses. Defendants argue that plaintiffs did not prevail on any substantial issue on appeal; accordingly, defendants urge me to deny plaintiffs' demand for fee reimbursement.

## II.

20 U.S.C. § 1415(e)(4)(B) states, "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." Much caselaw has been spawned as courts labored to give content to the phrase "prevailing party." I quote from one particularly thorough analysis of this vague term:

The United States Supreme Court has determined that the term "prevailing party" under 42 U.S.C. § 1988 (attorney's fees in civil rights litigation) designates a party who has succeeded on any significant issue in litigation which achieves some of the benefit the party sought in bringing the action. See Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 109 S.Ct. 1486, 1489, 103 L.Ed.2d 866 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). To successfully claim prevailing party status, the plaintiff need only cross a minimal threshold—more than a mere technical or de minimus victory. The significant relief standard comprehends simply "a resolution of the dispute which changes the legal relationship between [the plaintiff] and the defendant." Texas State Teachers Ass'n, 109 S.Ct. at 1493. The remedy the plaintiff receives, however, must be legally relevant, even if not factually substantial. A plaintiff is not a prevailing party unless the resolution of the dispute alters the legal relationship of the parties "in a manner which Congress sought to promote in the fee statute." Id.

*Angela L. v. Pasadena Indep. School Dist.*, 918 F.2d 1188, 1193 (5th Cir.1990) (footnotes omitted). *See also James v. Nashua School Dist.*, 720 F.Supp. 1053, 1056 (D.N.H.1989).

Both parties to this action devoted considerable attention in their Summary Judgment Memoranda to the question of whether the Review Officer's decision entitles plaintiffs to "prevailing party" status. It is unnecessary for the Court to resolve this issue as I find 20 U.S.C. § 1415(e)(4)(D) is dispositive. That subsection states:

No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—

(i) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;

(ii) the offer is not accepted within ten days; and

(iii) the court or administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.

On March 2, 1990, counsel for defendants sent plaintiffs' counsel two separate but related written settlement offers. One offer proposed a lump sum payment of fees in the amount of $5000 to plaintiffs' counsel. Hearing Exhibit 9. The second settlement offer, conjunctive with the first, stated, "Woonsocket recognizes Matthew as a learning disabled child. We have been treating this disability and will continue to do so." Hearing Exhibit 8. Woonsocket specifically proposed seven and a half hours/week of resource instruction for Matthew, plus one hour/week home tutoring, and one hour/week counseling. The school system further proposed that Matthew's teachers would fill out forms daily to keep Matthew's parents apprised of his progress in school. Additionally, weekly meetings would be held "with counselors, administrators, teachers and parents to provide consistent home/school contact." *Id.* The second settlement offer closed with the following request: "If Mr. & Mrs. L[.] wish something else without the necessity of a hearing, please advise and we will respond immediately." *Id.* Defendants contend, and plaintiffs do not refute, that plaintiffs did not respond to defendants' settlement offer.

Plaintiffs argue that they are nonetheless entitled to attorneys' fees in accordance with 20 U.S.C. § 1415(e)(4)(E), which states: "[n]otwithstanding the provisions of subparagraph (D), an award of attorneys' fees and related costs may be made to a parent or guardian who is the prevailing party and who was substantially justified in rejecting the settlement offer." According to plaintiffs,

The plaintiffs had no alternative but to reject the settlement offer. Defendants' offer with respect to services (Ex. 8) proposes nothing beyond that which is contained in the proposed IEP of January 1990. The offer makes no mention of the recognizing (sic) the student's present levels of performance and specific areas of disability as determined by the independent evaluation. In fact, this proposal makes no mention of even considering the findings of the Imber report. Essentially, this offer of settlement is simply a boiled down version of the January 1990 proposed IEP, which was determined to be fatally flawed in the administrative hearing....

Since the acceptance of the offer concerning services would have resulted in an inappropriate IEP, the plaintiffs were substantially justified in rejecting the offer. Accordingly, there could be no justification for the plaintiffs accepting the defendants' offer regarding fees. (Ex. 9).

Memorandum in Support of Plaintiffs' Cross–Motion for Summary Judgment at 14–15.

My analysis of this case is bifurcated: first, I must determine whether the requirements of 20 U.S.C. § 1415(e)(4)(D)(iii) have been met. In other words, was the

relief obtained by plaintiffs from the reviewing officer no more favorable than the settlement terms proposed by defendants? If I find that plaintiffs received no greater relief by going forward with the administrative appeal than they would have received had they accepted defendants' settlement offer, I must then decide whether the requirements of 20 U.S.C. § 1415(e)(4)(E) are met: were the plaintiffs "prevailing parties," and were they substantially justified in rejecting defendants' settlement offer?

## III.

■ Having previously detailed the substance of defendants' settlement offer, I will examine the results obtained by plaintiffs under the Review Officer's decision. Firstly, Review Officer McGarry ordered defendants to pay for the full cost of the Imber evaluation, which totalled $1,987.50. No further reimbursement for fees or costs was ordered. "In all other respects, the appellants are responsible for their own legal fees and costs." McGarry Opinion at 12. McGarry also ordered that Matthew remain in a regular classroom environment except for one and a half hours/day of special education in a resource program. Additionally, a new IEP was to be drawn up by April 30, 1990, relying upon the proposed January 1990 IEP and Dr. Imber's recommendations; further testing of Matthew's progress was to be conducted prior to April 30, 1991; a special education tutor and a therapist were to be provided for Matthew; and the Rhode Island Department of Education was to provide a monitor to assist the parties in reconciling any differing interpretations of the Review Officer's decision. McGarry Opinion at 12.

I begin my comparison of the results obtained through administrative appeal with those offered in defendants' settlement offer by noting that plaintiffs never responded to the settlement offer with a counter-offer or list of additional demands. I find this troubling, as defendants made it clear that they would negotiate the terms of settlement with plaintiffs. Having failed to make even a good faith attempt at settlement, plaintiffs now seek thousands of dollars in attorneys fees. I cannot assume that any additional settlement demands made by plaintiffs would not have been accepted by defendants; nor can I close my eyes to plaintiffs' utter inflexibility regarding settlement, which effectively denied defendants the opportunity to address plaintiffs' additional concerns and thus avoid administrative and judicial review.

Clearly, defendants' proposed settlement was more economical than was the Reviewing Officer's monetary award. Had plaintiffs accepted the settlement, they would have received $5000, as opposed to the $1,987.50 awarded by Review Officer McGarry. As for the educational components of the proposed settlement, these too would appear to have benefitted plaintiffs no less than did the Review Officer's determination. Specifically:

1) Defendants offered Matthew the same seven and a half hours per week of resource instruction ordered by McGarry;

2) Defendants offered home tutoring and counseling for Matthew, consonant with McGarry's order;

3) Defendants proposed weekly progress meetings with Matthew's parents, which was *not* required by the Review Officer's decision.

The only potentially significant items found in McGarry's order but *not* in defendants' settlement offer were the requirements that Matthew be re-evaluated before April 30, 1991, and that a new IEP be drawn up by that date, relying on both the proposed January 1990 IEP and Dr. Imber's recommendations.

Whether or not a new IEP would have provided greater relief to the plaintiffs than the settlement offer is not at all clear. In their settlement offer, defendants conceded that Matthew is learning disabled; additionally, they proposed weekly status meetings with Matthew's parents. Such meetings may well have enabled plaintiffs to tailor and monitor Matthew's particularized educational program to a greater extent than would be possible through the mandated formulation of one new IEP.

While the relief finally obtained by plaintiffs may have been somewhat different than the offer of settlement, I am unwilling to rule categorically that the former was *more favorable* than the latter.

### IV.

 Finally, I address whether the plaintiffs were substantially justified in rejecting defendant's settlement offer. Thomas F. Guernsey's article, *The School Pays the Piper, But How Much? Attorneys' Fees in Special Education Cases After the Handicapped Children's Protection Act of 1986*, 23 Wake Forest L.Rev. 237 (1988), is instructive on this issue. Guernsey suggests the following legitimate grounds for rejecting an EHA settlement offer:

> [I]t appears reasonable to reject an offer made too early in the process to allow sufficient time to determine the facts. An offer made prior to an independent educational evaluation for example, might justifiably be rejected, since prior to the evaluation the only available expert evaluations might be those controlled by the local educational agency. Further, a parent might reasonably reject a settlement offer at the administrative level because, absent formal discovery mechanisms in the due process hearing, information may be severely limited. However, once discovery is available, rejecting the same offer might be unreasonable.

*Id.* at 263. None of these legitimate grounds for settlement rejection exist in the instant case. Defendants proposed their settlement offer on March 2, 1990, several months after Dr. Imber's independent evaluation of Matthew. Additionally, I have no reason to believe that the plaintiffs were lacking information about defendants' case at the time the offer was made. Plaintiffs clearly had engaged in discovery prior to March 2, 1990, since the due process hearing took place in the Spring of 1990. Accordingly, I find that the plaintiffs—whether or not they were the "prevailing party"—were not substantially justified in rejecting defendants' settlement offer.

### V.

The Court finds that plaintiffs are barred from recovering attorneys' fees and related costs by 20 U.S.C. § 1415(e)(4)(D). Defendants' summary judgment motion is therefore granted.[1]

SO ORDERED.

---

1. Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).