996 F.2d 196
 84 Ed. Law Rep. 35, 2 A.D.D. 285
 Claire BORENGASSER, parent and next friend of Brigit Dollar;
Farm Whittaker, parent and next friend of Matthew
Whittaker; Laura Whittaker, parent and next friend of
Michael Delp; Rebecca Conner, parent and next friend of
Michael Delp; Edna Parks, parent and next friend of Quinton
Wilson; Ron Calhoun, parent and next friend of Barrett
Calhoun; Connie Calhoun, parent and next friend of Barrett
Calhoun; J.T. West, parent and next friend of Margo West;
Betty West, parent and next friend of Margo West; Mike
Mikles, parent and next friend of Matthew Mikles; Johna
Mikles, parent and next friend of Matthew Mikles; Billy
Teague, parent and next friend of Joshua Teague; Kathleen
Lynch, parent and next friend of Joshua Teague; Don
Abernathy, parent and next friend of Ronnie Abernathy;
Barbara Abernathy, parent and next friend of Ronnie
Abernathy; Randy Leathers, parent and next friend of Amber
Haynes and Heather Haynes; Barbara Leathers, parent and
next friend of Amber Haynes and Heather Haynes; Dub Helms,
parent and next friend of Phillip Spears; Kelly Helms,
parent and next friend of Phillip Spears; Joann Sims,
parent and next friend of Chris Sims; Philipp Morris,
parent and next friend of Justin Perkins; Marilyn Morris,
parent and next friend of Justin Perkins; Janet Pearcy,
parent and next friend of Scott Pearcy; Donald Harris,
parent and next friend of David Harris; Rita Harris, parent
and next friend of David Harris; Candace Blount, parent and
next friend of John Blount; Ralph Rogers, parent and next
friend of Ralph Rogers; Sherry Rogers, parent and next
friend of Ralph Rogers; Marvin Phillips, parent and next
friend of Tony Phillips; Danetta Phillips, parent and next
friend of Tony Phillips; Susie Moony, parent and next
friend of Eric Moony; Cyndi Prescott, parent and next
friend of Wesley Prescott and Joe Prescott; Joanne Travis,
parent and next friend of Jeremy Travis; Judy Edwards,
parent and next friend of Jaeger Gant; Gary Hammer, parent
and next friend of Matthew Hammer; Joan Hammer, parent and
next friend of Matthew Hammer, Appellants,
v.
The ARKANSAS STATE BOARD OF EDUCATION, and its subsidiary
agency Arkansas State Department of Education;
Fort Smith School District, Appellees.
 No. 92-3662.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1993.
Decided June 15, 1993.
 
 Gregory T. Karber, Fort Smith, AR, argued, for appellants.
 M. Keith Blythe, Fort Smith, AR, argued, for Fort Smith School Dist.
 Tim Humphries, Little Rock, AR, argued, for Arkansas State Bd. of Educ.
 Before McMILLIAN, Circuit Judge, HENLEY,* Senior Circuit Judge, and BEAM, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Appellants are the parents of children with learning disabilities who attend school in the Fort Smith School District in Fort Smith, Arkansas. They appeal from an order denying their motion for attorney's fees in the amount of $2,198.00 and costs in the amount of $40.70 entered in the United States District Court for the Western District of Arkansas. Borengasser v. Arkansas State Bd. of Educ., No. 91-2119 (W.D.Ark. Oct. 26, 1992) (Borengasser). For reversal, appellants argue the district court abused its discretion in denying their motion for attorney's fees and costs. As discussed below, we reverse and remand the case to the district court for further proceedings consistent with this opinion.
 
 
 2
 Appellants' children attended a special day facility known as the Rogers Center. The school was originally operated by a non-profit corporation called the Learning Academy and was funded by private grants and the United Way. The school district paid the salaries of the teachers and staff. Sometime before March 1989, United Way withdrew its funding. The school district decided to continue operation of the Learning Academy and relocated it to a school district building known as the Rogers School. In July 1989, the Learning Academy became the Rogers Center.
 
 
 3
 The State Department of Education and the State Board of Education later ordered the school district to integrate the Rogers Center students into a less restrictive environment at another school district facility. The school district opposed relocation and wanted to continue operation of the Rogers Center. Nonetheless, the State Department of Education insisted that the Rogers Center students be relocated to a less restrictive environment.
 
 
 4
 The school district attempted to postpone the relocation until the 1991-92 school year; however, in November 1990, the school district notified appellants that the Rogers Center would be closed at the end of the 1990-91 school year. The State Department of Education confirmed the closure by letter in January 1991. Appellants were very upset by the proposed closure and requested due process hearings pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. (1991).
 
 
 5
 In June 1991, appellants filed a complaint in federal district court against the State Board of Education and the State Department of Education. Appellants alleged that they had requested due process hearings under the IDEA and the school district had denied their requests in violation of the IDEA. The state defendants filed a third-party action against the school district; the school district later filed a counterclaim against the state defendants.
 
 
 6
 In December 1991, the district court granted partial summary judgment in favor of appellants on their claim that they had been denied due process hearings under the IDEA by the school district. The case was set for trial in February 1992. The parties continued to prepare for trial as well as to discuss the possibility of settlement. The parties did reach a settlement agreement and submitted the settlement in the form of an agreed order to the district court for approval. The district court approved the agreed order in February 1992.
 
 
 7
 The agreed order required the school district to hold Individual Education Plan (IEP) conferences between March 1, 1992, and May 1, 1992. Borengasser, slip op. at 4 (Feb. 18, 1992). The agreed order expressly required both program conferences and placement conferences to be conducted. Id. The timing of the IEP conferences was extremely important to appellants because they disapproved of the school district's practice of holding IEP conferences after the beginning of the school year. Appellants believed that many students began the school year in an improper program or placement or both and that the administrative process of objecting to the IEP took most of the school year. For this reason, appellants wanted IEP conferences held far ahead of the beginning of the school year at issue so that they would have enough time to object and appeal the IEPs if they disagreed with them. Appellants believed the 1992 IEPs would be particularly important in light of the school district's planned closure of the Rogers Center.
 
 
 8
 In early April 1992, the school district mailed notices of scheduled IEP conferences to appellants. The school district scheduled all 32 IEP conferences on the same day. According to the school district, it consulted with state officials about the scheduling of the IEP conferences and state officials did not object to the school district's plans. According to appellants, only placement conferences would be held, not programming conferences. This was inconsistent with the agreed order. Programming conferences are important because that is when the educational goals and needs of the child are defined. The programming conference results are often disputed. Appellants also learned that the special education teachers and some of the regular teachers were not scheduled to be present during the IEP conferences because of scheduling conflicts.
 
 
 9
 On April 14, 1992, appellants filed a motion to enforce the agreed order, alleging the school district failed to comply with the terms of the agreed order not only with respect to the content of the conferences, but also with respect to the timing of the conferences. The district court held a hearing on April 20, 1992, and ruled in favor of appellants. The district court found the school district was acting in good faith, but was not in compliance with the agreed order and ordered the school district to comply with federal regulations as to the timing of the IEP conferences. Borengasser, slip op. at 1 (May 15, 1992) (order enforcing agreed order). The district court set aside and vacated the IEP conferences that had been held before the hearing, and required the school district to hold new IEP conferences for all Rogers Center students during a 60-day period between May 15, 1992, and July 15, 1992. Id. Finally, the district court required the school district to hold future IEP conferences by the anniversary date in each succeeding year. Id.
 
 
 10
 Appellants then filed a motion for attorney's fees in the amount of $2,198.00 and costs in the amount of $40.70 as prevailing parties under 20 U.S.C. § 1415(e)(4)(B). The school district opposed the motion, arguing that special circumstances existed which justified denial, specifically that counsel for appellants had made no attempt to resolve the dispute before filing the motion to enforce the agreed order. In addition, the school district argued that a motion to enforce a settlement was not the kind of action for which attorney's fees could be awarded under 20 U.S.C. § 1415(e)(4)(B), and that appellants really were not prevailing parties because the school district was already doing what the district court ordered.
 
 
 11
 The district court denied the motion for attorney's fees because counsel for appellants had made no attempt to resolve the dispute before filing the motion to enforce the agreed order and because the school district had acted in good faith in scheduling the IEP conferences. Borengasser, slip op. at 7 (Oct. 26, 1992). This appeal followed.
 
 
 12
 The IDEA's attorney's fees provision, 20 U.S.C. § 1415(e)(4)(B) (1986), is similar to the civil rights attorney's fees award statute, 42 U.S.C. § 1988 (1986). Under both statutes, attorney's fees should ordinarily be awarded to the prevailing party unless "special circumstances" exist to make an award unjust. Abu-Sahyun v. Palo Alto Unified Sch. Dist., 843 F.2d 1250, 1252 (9th Cir.1988) (20 U.S.C. § 1415); Planned Parenthood of Minn. Inc. v. Citizens for Community Action, 558 F.2d 861, 871 (8th Cir.1977) (42 U.S.C. § 1988). We review attorney's fees award decisions under an abuse of discretion standard. Johnson v. Bismarck Pub. Sch. Dist., 949 F.2d 1000, 1003 (8th Cir.1991); Independent Sch. Dist. No. 623 v. Digre, 893 F.2d 987, 990 (8th Cir.1990). We hold the district court abused its discretion in denying appellants' motion for attorney's fees and costs in connection with the motion to enforce the agreed order.
 
 
 13
 It is undisputed that counsel for appellants did not attempt to resolve this matter before filing the motion to enforce the agreed order. However, it is also undisputed that counsel for the school district did not initiate settlement discussions or otherwise make any attempt to resolve the dispute at any time after the motion was filed or before it was heard. The district court's emphasis only on the failure of counsel for appellants to initiate settlement attempts is unreasonable.
 
 
 14
 Regarding the school district's claim that the motion to enforce the agreed order is not the type of proceeding for which attorney's fees are recoverable under the IDEA, we do not agree. Title 20 U.S.C. § 1415(e)(4)(B) governs the award of attorney's fees in actions to enforce IDEA rights, specifically providing: "In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a handicapped child or youth who is the prevailing party." Therefore, the initial question is whether appellants were prevailing parties, that is, did they "succeed on 'any significant issue ... which achieve[d] some of the benefit [they] sought' " in their motion to enforce the agreed order. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92, 109 S.Ct. 1486, 1493-94, 103 L.Ed.2d 866 (1989), quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978).
 
 
 15
 We hold appellants were prevailing parties on their motion to enforce the agreed order. They sought to have the IEP conferences held before the beginning of each school year and include both program and placement conferences in accordance with the agreed order. The district court not only addressed the timing of the IEP conferences as requested by appellants, it also vacated the IEP conferences held before May 15, 1992. Appellants received all that they sought in the motion to enforce the agreed order and more. Therefore, appellants were prevailing parties.
 
 
 16
 We also hold the school district's good faith attempt to comply with the agreed order is irrelevant. See Fontenot v. Louisiana Bd. of Elementary & Secondary Educ., 835 F.2d 117, 120 (5th Cir.1988) (school board's good faith did not justify denial of attorney's fees); Laura I. v. Clausen, 676 F.Supp. 717, 720 (M.D.La.1988) (attorney's fees not denied because school officials acted in good faith).
 
 
 17
 Accordingly, the order of the district court is reversed and the case is remanded to the district court with instructions to award appellants $2,198.00 for attorney's fees and $40.70 for costs.[1]
 
 
 
 *
 Judge Henley agreed in conference with the result in this case, but became ill and was unable to participate further before the filing of the opinion
 
 
 [1]
 All parties agree the State Board of Education and the State Department of Education should not be liable for the award of attorney's fees and costs. The school district is the only party defendant with respect to the motion for attorney's fees and costs in connection with the motion to enforce the agreed order