TAMPAM, INC., Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District No. 2—90—0413

Opinion filed January 31, 1991.—Rehearing denied March 6, 1991.

REINHARD, P.J., dissenting.

Thomas R. McMillen, of Litigation, Arbitration & Mediation, of Winnetka, and Law Offices of Henry S. Dixon, of Dixon (Henry S. Dixon, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Dawn Wallarab, Assistant Attorney General, and M. Thomas Suits, of counsel), for appellee Property Tax Appeal Board.

Dennis Schumacher, State's Attorney, of Oregon (Douglas P. Floski, Assistant State's Attorney, of counsel), for other appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Tampam, Inc., appeals from an order of the circuit court which awarded attorney fees in an amount substantially less than plaintiff had requested. Plaintiff contends that the trial court erred by refusing to award attorney fees for the work performed on a claim contained in its complaint and by using a lower than requested hourly rate to calculate the fee award. We affirm.

On October 24, 1988, plaintiff filed a second amended complaint. Count I of this complaint sought injunctive and monetary relief against the supervisor of assessments for Ogle County, the treasurer of Ogle County, and Ogle County itself for the alleged violation of plaintiff's civil rights. Count I was based on the Civil Rights Act (42 U.S.C. §1983 (1988)). Plaintiff brought suit on its own behalf and as a representative of the following class:

"All owners of farms in Ogle County, Illinois containing public roads or highways, wasteland, and other land which has been illegally and unconstitutionally assessed and taxed by defendants."

Plaintiff alleged that its farm contained portions of roadways maintained as public roads, wasteland which makes no contribution to cropland, and fields of irregular size and shape. Plaintiff contended that the above-mentioned property was improperly assessed. Plaintiff admits that county officials exempted from taxation public roadways that encroached upon plaintiff's farmland, but alleged that the officials did not properly calculate the width of these roadways. Therefore, plaintiff was being overassessed. Plaintiff also complained that county officials were assessing all wasteland at $5 per acre when the statute required the wasteland to be assessed in relation to its contributory value to the farmland. Plaintiff asserted that these improper taxing procedures violated the due process rights of the class, denied the class members the equal protection of the laws and were discriminatory. Plaintiff sought to recover the allegedly improper taxes that had been previously paid, to prevent defendants from collection of these taxes in the future, and to receive attorney fees, costs and expenses.

Count II of plaintiff's second amended complaint was a petition for administrative review of a decision of the Property Tax Appeal Board. Count II is not a part of this appeal.

Prior to trial, count I was settled by a stipulation insofar as it involved taxes that were being assessed on public roads and highways that encroached on plaintiff's farmland and land classified as wasteland. Pursuant to the stipulation, if it was determined that a portion of a public road or highway had been improperly taxed to a landowner for the year 1988 or thereafter, the amount of said tax would be refunded. Thereafter, the actual amount of a farm owner's land consumed by roads and highways would be assessed at the rate of $0 per acre for that landowner. Additionally, the stipulation provided that the assessment of all farmland in Ogle County which was classified as wasteland would be reduced from $5 per acre to $1 per acre for the 1988 tax bills and would be assessed at $0 per acre thereafter. Plaintiff's attorneys agreed to submit to the court their claims for fees and costs. The stipulation was approved by the court on May 2, 1989.

The issues of the assessor's failure to assess fields on the basis of their size and shape and the alleged improper classification of certain lands such as pastures and wood lots were not settled by the stipulation. No judgment order disposing of count I was entered, and no ap-

peal was taken from the order approving the stipulation.

Plaintiff filed a petition for attorney fees and costs. The petition sought fees for lead counsel at the rate of $190 per hour while he was employed by the Chicago firm of Bell, Boyd & Lloyd and at the rate of $150 per hour while he was a sole practitioner. The total fee request for lead counsel was $43,312 plus a 50% enhancement due to the unusual and difficult nature of the case. Plaintiff also requested fees at the rate of $95 per hour for local counsel. This fee request totaled $6,140. The total fee request amounted to $74,694.

After a hearing on the matter, the court awarded fees in the reduced amount of $16,346. This award included a 35% reduction for the time spent on the roads and highways claim. The court found that this claim was not viable as a section 1983 claim and was factually and legally distinct from the wasteland claim. The court also reduced the rate of compensation for lead counsel from $190 and $150 per hour to $95 per hour. The court also deducted an additional $3,000 from the award of fees to lead counsel and $800 from the award to local counsel to "reflect the amounts involved in the case and the results obtained."

On March 21, 1990, the court denied plaintiff's motion to reconsider the fee award. However, the court did award an additional sum for the preparation of the petition for fees and expenses.

Plaintiff appeals from the court's orders on fees and expenses entered on September 27, 1989, and March 21, 1990. This appeal was made pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

This court issued an order asking the parties to be prepared at oral argument to cite legal authority supporting the proposition that wasteland may be granted exempt status or assessed at zero without a judgmental determination of its contributory value to the farmland parcel pursuant to section 501e. While this issue was addressed by the parties at oral argument, they did not cite statutory authority. We have determined that a resolution of this issue is not specifically required to review the case at bar. Therefore, any discussion of this issue has been omitted from this opinion.

We feel it is necessary to state expressly the limited nature of this review. This court expresses no opinion as to the propriety of the agreements made by the parties and contained in the stipulation. Additionally, this opinion is limited solely to the issues raised by the appellant and countered by the appellees. Any other issues that may appear to have arisen as a result of the procedural history of this case or the unchallenged rulings of the court will not be discussed.

Attorney fees are recoverable in a civil action pursuant to

section 1988, which states: "In any action or proceeding to enforce a provision of section[ ] *** 1983, *** of this title, *** the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (42 U.S.C. §1988 (1988).) The amount of the fee award rests within the discretion of the trial court. *Hensley v. Eckerhart* (1983), 461 U.S. 424, 437, 76 L. Ed. 2d 40, 53, 103 S. Ct. 1933, 1941.

A plaintiff seeking attorney fees under section 1988 must initially establish that he or she is the prevailing party. (*Hensley*, 461 U.S. at 433, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939; *Texas State Teachers Association v. Garland Independent School District* (1989), 489 U.S. 782, 788-89, 103 L. Ed. 2d 866, 875, 109 S. Ct. 1486, 1491.) A party who prevails by way of a settlement order rather than through litigation is not precluded from claiming attorney fees as the prevailing party within the meaning of section 1988. (*Maher v. Gagne* (1980), 448 U.S. 122, 129, 65 L. Ed. 2d 653, 661, 100 S. Ct. 2570, 2575.) Once a party has obtained the status of a prevailing party, the court must review the circumstances presented and determine the proper amount of attorney fees to be awarded.

The starting point for determining the amount of fees to be awarded is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. (*Hensley*, 461 U.S. at 433, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939.) This sum is known as the "lodestar." The court may then, in its discretion, increase or decrease this lodestar amount. (*Hensley*, 461 U.S. at 434, 76 L. Ed. 2d at 51, 103 S. Ct. at 1940.) There are 12 factors the trial court should consider in arriving at an award of attorney fees under section 1988: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. (*Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714, 717-19.) The trial court should provide a clear and concise explanation if it chooses to cut back the number of hours spent on the case or grant less than the requested hourly rate. *Tomazzoli v. Sheedy* (7th Cir. 1986), 804 F.2d 93, 97.

We first review the court's decision that the public roads chal-

lenge was not a viable action under section 1983 and, therefore, plaintiff was not entitled to attorney fees under section 1988. The trial court stated that Ogle County's general guideline for estimating the width of roads and highways located on plaintiff's property to determine the appropriate exemption from taxation was nothing more than an initial assessment tool and a fair substitute for costly governmental surveys. The court found that, "[i]f Tampam's class had a federal constitutional claim on this point, it must be as a violation of substantive or procedural due process, that taxes were imposed on exempt land, or that the guidelines and correction remedies yielded inaccurate valuations." The trial court held that this due process challenge could not be the basis of a section 1983 action because the State of Illinois provides adequate post-deprivation remedies.

In *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908, an inmate of a State prison brought suit against prison officials for the value of certain hobby materials that were lost when normal procedures for receipt of packages were not followed. The inmate alleged a violation of section 1983 claiming he was deprived of property without due process of law. The Supreme Court held that summary judgment in favor of the prison officials was proper because the inmate had not properly alleged a violation of the due process clause of the fourteenth amendment. (*Parratt*, 451 U.S. at 543, 68 L. Ed. 2d at 433-34, 101 S. Ct. at 1917.) The Court stated:

> "[T]he deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation. The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State." *Parratt*, 451 U.S. at 543, 68 L. Ed. 2d at 434, 101 S. Ct. at 1917.

Plaintiff contends that the decision in *Parratt* has been clarified and narrowed by the Supreme Court in *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148, and *Hudson v. Palmer* (1984), 468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Ct. 3194. Plaintiff asserts that *Parratt* is now limited to situations involving the State's commission of unforeseeable acts against an individual and does not apply to acts taken by a governmental official as a custom or practice that affect an entire class of plaintiffs. We disagree with such a narrow interpretation.

In *Logan*, an employee was discharged purportedly as a result of a physical handicap, and he filed a timely charge of unlawful termination with the Illinois Fair Employment Practices Commission. Pursuant to established procedure (see Ill. Rev. Stat. 1979, ch. 48, par. 858), the commission has 120 days to convene a fact-finding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement. However, apparently through inadvertence, the commission did not schedule the conference within the 120-day statutory term. The Illinois Supreme Court found that the running of the 120-day term without a conference deprived the commission of jurisdiction to consider the employee's complaint. (See *Zimmerman Brush Co. v. Fair Employment Practices Comm'n* (1980), 82 Ill. 2d 99.) The court also determined that the employee's due process and equal protection rights were not violated as Illinois had provided for reasonable procedures to be followed upon the filing of a complaint. *Zimmerman*, 82 Ill. 2d at 108.

The United States Supreme Court reversed, stating that "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." (*Logan*, 455 U.S. at 434, 71 L. Ed. 2d at 276-77, 102 S. Ct. at 1157-58.) The Court distinguished *Parratt* by noting that in *Logan* it was the State system itself that destroyed a complainant's property interest by operation of law, not a random and unauthorized act by a State employee as in *Parratt*. (*Logan*, 455 U.S. at 435-36, 71 L. Ed. 2d at 277-78, 102 S. Ct. at 1157-58.) The Court noted that the employee was challenging the established State procedure that destroys his entitlement without due process, not the commission's error. *Logan*, 455 U.S. at 436, 71 L. Ed. 2d at 278, 102 S. Ct. at 1158.

In the case at bar, like in *Parratt*, Tampam is complaining about the *acts* of the State. Tampam incorrectly equates its objections to the assessor's custom and practice of exempting only a standard width of road from the tax roll with an objection to the procedures and practices established by the State to obtain redress for the assessor's actions. This interpretation is not warranted by existing case law.

Tampam has also misinterpreted the Supreme Court's decision in *Hudson*. *Hudson* was concerned with whether a prison inmate had a right of privacy in his prison cell entitling him to the protection of the fourth amendment, and whether the inmate's due process rights were violated when certain property was destroyed during a search of his cell. The Court, stating that "the State's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy," found that the inmate's due process rights were not violated

as the State provided for an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 534-36, 82 L. Ed. 2d at 408-09, 104 S. Ct. at 3204-05.

In *Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, taxpayers filed suit against the Will County Board of Review alleging violations of due process and equal protection under section 1983. The plaintiffs contended that the defendant improperly increased the assessment of all industrial and commercial property. The defendant admitted that it acted under color of State statutes and the plaintiffs had been deprived of property by taxation. However, the defendant insisted there had been no denial of plaintiffs' constitutional right to due process. The court noted that Illinois statutes provide remedies for taxpayers who seek redress for excessive taxation and a party cannot maintain that he has been deprived of due process when he has declined to pursue the remedies which the State provides. (*Beverly Bank*, 117 Ill. App. 3d at 662-63.) The court concluded that "the action of the board of review, though illegal under the law of Illinois, did not deprive plaintiffs of their property without due process of law because Illinois law provides additional remedies to protect taxpayers from just the sort of arbitrary action by taxing officials as had been alleged here." *Beverly Bank*, 117 Ill. App. 3d at 663.

■ We determine that the reasoning espoused in *Beverly Bank* and the principles set forth by the Supreme Court in the above-cited cases are applicable to the case at bar. The State's action of improperly calculating the width of the roads that encroach on plaintiff's property when computing an exemption is not complete until the post-deprivation remedy established by the legislature is exhausted to plaintiff's detriment. Plaintiff did not avail itself of the remedies established by the legislature, and, therefore, it cannot claim a violation of due process. The court was correct in finding that plaintiff's public roads claim as alleged was not a viable due process challenge under section 1983.

Tampam claims that even if its due process claim concerning the roads issue fails, its equal protection claim on this issue should allow for attorney fees to be awarded under section 1988. Tampam cites *Beverly Bank* to support this position. While we note that the court in *Beverly Bank* did remand the issue of whether the Board of Review violated the plaintiff's equal protection rights, this action was taken in reviewing the grant of defendants' motion for judgment on the pleadings and dismissal. The court simply found that plaintiff had sufficiently alleged a violation of equal protection rights in its complaint. The court did not address the merits of the contention to determine if the plaintiff was entitled to attorney fees.

■ In the case at bar, Tampam is seeking attorney fees pursuant to section 1988 due to defendants' violation of equal protection. As stated earlier, to recover fees under section 1988, a party must achieve prevailing party status. (See *Hensley*, 461 U.S. at 433, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939.) To prevail in an equal protection action, the plaintiff must establish intentional or purposeful discrimination. (*Roche v. County of Lake* (1984), 126 Ill. App. 3d 976, 983.) A discriminatory purpose is not presumed, and there must be a showing of clear and intentional discrimination. *Roche*, 126 Ill. App. 3d at 983.

■ While Tampam did allege elements of an equal protection violation in its complaint, there is nothing in the record to show clear and intentional discrimination. The court did not make any findings that the defendants either intentionally or purposefully discriminated against Tampam, and the settlement agreement does not recite this fact. While it is true that Tampam may have stated a cause of action for violation of its equal protection rights such as was the case in *Beverly Bank*, it does not automatically follow that it has obtained prevailing party status on this claim and is entitled to attorney fees. We determine that the trial court was correct in finding that Tampam was not entitled to attorney fees pursuant to section 1988 for its public roads claim.

■ Plaintiff argues that, even if the public roads claim was not a viable section 1983 claim, it should receive attorney fees associated with this issue because it is closely related to the wasteland claim. We disagree. A complaint alleging that county officials use certain established guidelines to calculate the width of public roadways that encroach upon farm owners' property when granting tax exemptions has nothing to do with a complaint that these same officials do not comply with statutory requirements when assessing wasteland. Evidence establishing one form of misconduct is not relevant to establishing the other form of misconduct. (See *Lenard v. Argento* (7th Cir. 1987), 808 F.2d 1242, 1246.) The trial court was correct in determining that the two claims were separate and distinct.

Plaintiff next claims that, even if the court was correct in eliminating the time spent on the public roads claim in calculating the fee award, the exclusion of 35% of the total time spent on the case was arbitrary, excessive and in error.

■ Again, we note that the determination of a reasonable attorney fee award is within the discretion of the trial court. (*Hensley*, 461 U.S. at 436-37, 76 L. Ed. at 52-53, 103 S. Ct. at 1941.) In *Ustrak v. Fairman* (7th Cir. 1988), 851 F.2d 983, 987, the court stated:

"If ever there was a case for reviewing the determinations of a

trial court under a highly deferential version of the 'abuse of discretion' standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court. Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny." (*Ustrak*, 851 F.2d at 987.)

A trial court should either attempt to identify specific hours that should be eliminated or simply reduce the award to account for the limited success of the plaintiff. (*Texas State Teachers Association*, 489 U.S. at 789-90, 103 L. Ed. 2d at 875-76, 109 S. Ct. at 1492.) While the above principles were set forth in cases where a plaintiff succeeded on some, but not all claims, we believe these principles are also applicable to situations such as the case at bar in which an award of attorney fees is available for some but not all of the claims raised.

■ The trial court provided this court with a clear and extremely thorough discussion of its fee award in its order. The court set forth the applicable law and arrived at the conclusion that no more than 65% of the time spent on this litigation could be reasonably attributable to the wasteland challenge and the research and proceedings through which it straddled other issues. This court is not in a position to second-guess the trial court on this determination. We determine that the trial court's finding was not an abuse of discretion.

■ The remaining claim concerns the fee award granted to plaintiff as a result of the settlement of the wasteland claim. Plaintiff contends that the court erred in compensating plaintiff's attorneys at the rate of $95 per hour. Plaintiff cites *Chrapliwy v. Uniroyal, Inc.* (7th Cir. 1982), 670 F.2d 760, for the proposition that an attorney's own rate rather than the local forum rate is the proper rate to be used in computing a reasonable attorney fee award. While *Chrapliwy* does provide this court with considerable insight into the appropriate rate to be used by the court in awarding fees, we do not share plaintiff's beliefs that *Chrapliwy* supports its position.

In *Chrapliwy*, the district court awarded attorney fees to prevailing plaintiffs. However, the court used a local forum hourly rate that was lower than the rate customarily charged by the plaintiffs' out-of-town attorneys due to the court's belief that it was mandated by law to do so. The reviewing court reversed the decision of the district court for failure to exercise its discretion and stated:

"A judge may well approach high rates with skepticism, and he may exercise some discretion in lowering such rates.

* * *

If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service.

* * *

We think that a judge, in allowing an attorney's fees under Title VII or similar statute, has discretion to question the reasonableness of an out of town attorney's billing rate if there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered." *Chrapliwy,* 670 F.2d at 767-69.

In the case at bar, the trial court expressly stated that "[m]any [attorneys] in the local bar, certainly Tampam's experienced local counsel Nye, could have quickly boned up on the applicable facets of section 1983 litigation; few if any would have been dissuaded by controversy from taking this straight forward tax case with its federal 'twist'." Plaintiff claims there was nothing in the record upon which the court could have based this conclusion. While it is true that the parties had not placed anything in evidence to establish the availability of local counsel, we find that the court could arrive at this conclusion without admitting evidence of this fact. The trial judge in this case has been a member of the Ogle County judiciary and legal community for many years. It is certainly appropriate for a judge to use his background, experience and common knowledge when making a discretionary ruling. The affidavits of plaintiff's attorneys filed in support of its motion for reconsideration are not sufficient to refute the court's conclusion. Local counsel's affidavit states, "[t]o the best of my knowledge, no attorneys in the Fifteenth Judicial District would have been willing to take the aforementioned case." (Emphasis added.) Out-of-town counsel's affidavit states, "[n]or did affiant know of any private attorney in the western part of Illinois who would take this case." (Emphasis added.) There is no indication that either of plaintiff's attorneys had attempted to employ or even contact a local attorney to determine if one would have been willing to take this case. Again, the court was extremely complete in its discussion of this issue, and we determine that its decision is not an abuse of discretion.

Plaintiff contends that this fee award does not even cover its attorney's overhead cost and will only serve to dissuade competent counsel from taking important civil rights cases. Awarding attorney fees based upon the cost of providing those services has been ex-

pressly rejected by the United State Supreme Court in *Blum v. Stenson* (1984), 465 U.S. 886, 79 L. Ed. 2d 891, 104 S. Ct. 1541. The Court stated that reasonable fees awarded pursuant to section 1988 are to be calculated according to the prevailing market rates in the relevant community, and the policy arguments in favor of a cost-based standard should be addressed to Congress instead of the Court. (*Blum*, 465 U.S. at 895, 79 L. Ed. 2d at 899-900, 109 S. Ct. at 1547.) Under the specific findings of fact made in this case, the court did not err by using a local forum rate to compute attorney fees.

■ Plaintiff's final contention is that the court erred by reducing the award of attorney fees by an additional $3,000 for lead counsel and $800 for local counsel. The trial court reduced the award to "reflect the amounts involved in the case and the results obtained." Any downward modification of the lodestar figure should be for one of the enumerated factors and should be expressed in a dollar amount reflecting, as best as possible, the market value associated with the specific defect. (*Lynch v. City of Milwaukee* (7th Cir. 1984), 747 F.2d 423, 430.) The trial court specifically stated the reason for its reduction and the dollar amount of this reduction. An abuse of discretion occurs only when no reasonable person could take the view adopted by the trial court. (*Lynch*, 747 F.2d at 426.) We do not find that the court abused its discretion by reducing the lodestar figures by $3,000 and $800 respectively.

For the reasons stated above, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

GEIGER, J., concurs.

PRESIDING JUSTICE REINHARD, dissenting:

I respectfully dissent. In this case, the only issue before the trial court on plaintiff's petition for attorney fees was the amount of attorney fees pursuant to section 1988 (42 U.S.C. §1988 (1988)), not whether the "roads claim" was a viable section 1983 action (42 U.S.C. §1983 (1988)) so as to entitle plaintiff to fees. Therefore, I would find that the denial of fees for the "roads claim" was error. Further, I would find that the trial court abused its discretion by reducing the hourly rate to the local rate and by further reducing the award to reflect the amount involved and result obtained.

Because the parties stipulated to a settlement of count I, the trial court erred in determining the viability of the "roads claim" as a sec-

tion 1983 cause of action. Count I of plaintiff's second amended complaint based on a section 1983 cause of action alleged that defendants violated the class' federally protected rights of due process and equal protection by improperly assessing and taxing certain types of farmland, including wastelands, land containing public roads, and lands of irregular size and shapes. The stipulation for settlement of count I included, among other things, a description of the plaintiff as "[a]ll owners of farms in Ogle County, Illinois, containing *public roads or highways*, or wasteland, which has been illegally or unconstitutionally taxed." (Emphasis added.) The settlement also prescribes procedures allowing class members to obtain refunds for taxes improperly collected in the year of 1988 for taxes assessed against portions of public roads on private land and thereafter assessing public roads at the rate of $0 per acre for those landowners who were improperly taxed. The stipulation for settlement also agreed that plaintiff could recover attorney fees and stated "[p]ursuant to 42 U.S.C. sec. 1988, Plaintiff's attorneys will submit to the court their claims for attorneys' fees and costs which have been incurred in connection with this litigation or for the *claims* involved in it." (Emphasis added.) Plaintiff was a prevailing party pursuant to section 1988. (See *Maher v. Gagne* (1980), 448 U.S. 122, 129, 65 L. Ed. 2d 653, 661, 100 S. Ct. 2570, 2575.) Defendants did not contend otherwise in the trial court. Therefore, the only issue presented to the trial court was the petition for fees.

In the hearing on the petition for attorney fees, defendants contested only the reasonableness of the fees sought by plaintiff. Specifically, defendants contested plaintiff's request for an enhancement, certain time discrepancies, the description of the work performed, the number of hours and the rate of pay. Defendants neither in their written response to the petition for fees nor at the hearing contested the viability of the "roads claims." From the plain language of the stipulation for settlement, it is apparent that defendants settled the section 1983 claim involving public roads and highways. Therefore, the viability of the "roads claim" as a section 1983 action was not before the trial court. The only issue before the trial court was the reasonableness of the petition for fees. Thus, the trial court erred by *sua sponte* in its written decision addressing for the first time the issue of the viability of the "roads claim" as a section 1983 cause of action. Accordingly, without addressing the merits of whether of the "roads claim" is a valid section 1983 action as that issue was conceded by the settlement, I dissent from that portion of the majority opinion which affirms the trial court's decision not to award attorney fees for the "roads claim."

I also disagree with the majority's conclusion that the trial court properly reduced plaintiff's attorney fees to the local rate. Although the majority correctly cites passages from *Chrapliwy v. Uniroyal, Inc.* (7th Cir. 1982), 670 F.2d 760, this case supports plaintiff's contention that the trial court erred in reducing the award. In reversing the trial court's reduction of attorney fees to the local rate, the United States Court of Appeals for the Seventh Circuit in *Chrapliwy* stated:

> "If, however, a party does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable that the party go elsewhere to find an attorney, and the court should make the allowance on the basis of the chosen attorney's billing rate unless the rate customarily charged in that attorney's locality for truly similar services is deemed to require an adjustment." (*Chrapliwy*, 670 F.2d at 769.)

If a plaintiff can show he has been unable through diligent, good-faith efforts to retain local counsel, attorney fees under section 1988 are not limited to the prevailing rate in the locality where the case is tried. *Avalon Cinema Corp. v. Thompson* (8th Cir. 1982), 689 F.2d 137, 140-41.

Contrary to the majority's conclusion, plaintiff employed a local counsel, Philip H. Nye, Jr., who had practiced law in Ogle County for almost 30 years. According to Nye's affidavit:

> "[N]o attorney in the Fifteenth Judicial District would have been willing to take the aforementioned case on a regular hourly fee basis much less a contingency basis because of the uncertainty of the outcome of the litigation, the time-consuming complication imposed by the filing of a class action, and of litigation involving farm real estate taxes and a new and uncontested statute. Further adding to the reluctance of local attorneys to take the case in question is the fact that it involves filing litigation against local public officials."

Lead counsel's affidavit states, "[n]or did affiant know of any private attorneys in the western part of Illinois who would take this case on a contingent basis because of its high risk." I believe plaintiff adequately met his burden to show that local counsel, except for Nye, who only provided legal assistance and was unwilling to act as lead counsel, were unwilling or unavailable to handle this case. Because both attorneys knew of no other local counsel who would take this case, it would seem futile for plaintiff to attempt to hire another local counsel, as the majority suggests, when attorney Nye with nearly 30 years of experience practicing law in the county knew of no other lo-

cal attorney who would handle the case.

The majority also places great reliance on the trial judge's own opinion that many attorneys in the local bar, including attorney Nye, could have "boned up on the applicable facts of section 1983 litigation." Not only is there no basis in the record to support that conclusion but also there is no support for the majority's statement that the trial judge in this case had the experience and background to make such a determination. Neither does the majority cite any authority to support the proposition that the trial judge may use his own background, experience and common knowledge to refute the affidavits to the contrary filed by plaintiff on this particular issue where no such counteraffidavits are filed by defendants.

Therefore, on this record, I would conclude that the trial court abused its discretion in finding services of equal quality were available at a lower rate in Ogle County than that charged by plaintiff.

I also disagree with the majority's conclusion that the trial court properly reduced the award of attorney fees by an additional $3,000 for lead counsel and $800 for local counsel. In reducing the award by these amounts, the trial court merely stated, "[a]fter much consideration and remembering our focus on the compensable 'wasteland claim,' we reduce the [lead counsel's] compensation by $3,000 and Nye's by $800 to reflect 'the amounts involved in the case and the results obtained.'" This one sentence is not a specifically stated reason, as the majority contends; rather, it is merely a conclusion by the trial court and not the reasons for the conclusion. (See *Lenard v. Argento* (7th Cir. 1987), 808 F.2d 1242, 1247.) The United States Supreme Court has expressly stated that a trial court must provide a concise but clear explanation of its reasons for the fee award. (*Hensley v. Eckerhart* (1983), 461 U.S. 424, 437, 76 L. Ed. 2d 40, 53, 103 S. Ct. 1933, 1941.) Although the trial court's explanation is undoubtedly concise, it is not a clear explanation of its reasons.

Furthermore, the use of the phrase, "the amount involved and the results obtained," as a factor in awarding fees under section 1988 is explained in *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714, 718. The court in *Johnson* noted the rationale behind this factor and stated, "[a]lthough the Court should consider the amount of damages, *** that consideration should not obviate court scrutiny of the decision's effect on the law. If the decision corrects across-the-board discrimination affecting a large class, *** the attorney's fee award should reflect the relief granted." *Johnson*, 488 F.2d at 718.

In this case, the trial court's decision to *reduce* plaintiff's attorney

fees based on this factor is incomprehensible. Plaintiff brought a class action on behalf of all owners of farms against the taxing bodies of a predominately agricultural county to prevent the county from taxing farmlands improperly. In the settlement, defendants agreed to two procedures: first, it must reassess *all* wasteland in Ogle County at the rate of $1 per acre for 1988 taxes and thereafter at the rate of $0 per acre; and second, it must refund any revenue improperly collected from a landowner in Ogle County for taxes based on public roads and highways and thereafter assess the rate at $0 per acre for that landowner. Clearly, rather than providing a basis to reduce the award of attorney fees, the factor pertaining to the amount involved and the results obtained actually bolsters plaintiff's right to an award of attorney fees.

Plaintiff prevailed in forcing defendants to reassess *all* wasteland on farms in an agricultural county at the rate of $0 per acre and to assess public roads and highways at the rate of $0 per acre for *all* landowners improperly taxed in the past. Therefore, the trial court abused its discretion by reducing the award of attorney fees for this factor.