# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 9, 2007

## C.S.C., ET AL. V. KNOX COUNTY BOARD OF EDUCATION, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 157833-2     Daryl Fansler, Chancellor**

---

### No. E2006–01155-COA-R3-CV - FILED MAY 25, 2007

---

In this class action lawsuit filed against the Knox County Board of Education and its superintendent, the trial court awarded the Plaintiffs a portion of their attorney's fees pursuant to 42 U.S.C. § 1988. The Defendants argue on appeal that the trial court erred in finding the Plaintiffs to be "prevailing parties" in the litigation and that the trial court's award of attorney's fees was unwarranted and erroneous. We hold that although the Plaintiffs were not successful on all of their claims, they achieved enough success in their lawsuit to be "prevailing parties." We find no abuse of the trial court's discretion in awarding Plaintiffs $45,000 in attorney's fees, and consequently affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Martha Haren McCampbell, Knoxville, Tennessee, for the Appellants, Knox County Board of Education and Dr. Charles Lindsey, Superintendent.

Dean Hill Rivkin and Brenda McGee, Knoxville, Tennessee, for the Appellees, C.S.C., a minor, by his next friend and mother, L.C., on behalf of C.S.C. and all others similarly situated, and M.A.M., a minor, by his next friend and mother, B.M., on behalf of M.A.M. and all others similarly situated.

# OPINION

## *I. Background*

This is the second time this case has been appealed. Our opinion on the first appeal, *C.S.C. v. Knox County Bd. of Educ.,* No. E2006-00087-COA-R3-CV, 2006 WL 3731304 (Tenn. Ct. App. E.S., Dec. 19, 2006) ("*C.S.C.* I") provides the following procedural and factual background. In April of 2003, the named Plaintiffs[1] filed this action for themselves and on behalf of all Knox County School students who had been, or in the future would be, removed from their regular public schools for periods of time in excess of ten consecutive days because of disciplinary reasons. *C.S.C.* I, 2006 WL 3731304, at *1. The complaint alleged that the Defendants' failure to provide the Plaintiffs with certain specified alternative educational services during the students' periods of suspension violated sections of the Tennessee Code, state regulations, and the Tennessee and United States Constitutions. *Id.* More specifically, the Plaintiffs alleged, among other things, that Knox County, in failing to provide its students with alternative educational services, had not complied with the requirements of Tenn. Code Ann. § 49-6-3402, which in 1986 mandated that "[a]t least one (1) alternative school shall be established and available for students in grades seven through twelve (7-12) who have been suspended or expelled as provided in this part... ." The complaint sought damages, a judgment declaring the alleged violations, and injunctive relief. The trial court granted the Plaintiffs' motion for class certification. The class consisted of all students enrolled in Knox County Schools who were, or will be, suspended or expelled from school for more than ten consecutive days. *Id.*

Shortly after the filing of the complaint, the trial court entered an order granting Plaintiff M.A.M.'s motion for a temporary injunction requiring Knox County to immediately provide M.A.M. with alternative educational services, and further finding as follows:

> The Court finds that the plaintiff has demonstrated a substantial likelihood of success on the merits of his claim as follows: Following his expulsion from Halls Middle School on March 10, 2003, M.A.M was denied alternative educational services pursuant to Tenn. Code Ann. § 49-6-3402(a) by being placed by defendant on a waiting list for such services for an excessive period of time. To date, M.A.M. has not received alternative educational services of any kind. The Court also finds that M.A.M. will suffer immediate and irreparable harm in the absence of the issuance of a temporary injunction; that the actual injury to the plaintiff outweighs the burden on the defendants of providing educational services to the plaintiff; and that the issuance of this temporary injunction is in the public interest.

In July of 2003, the Knox County Board of Education adopted policies to create an entitlement to alternative education for all students certified in the class. For the 2003-2004 school

---

[1] Initials are used in this litigation to preserve the anonymity of the Plaintiffs.

year, the Defendants implemented an evening alternative education program for students suspended for more than ten days. The Plaintiffs challenged several aspects of the 2003-2004 night program, seeking temporary injunctive relief and other relief from the trial court. The 2003-2004 program proved to be ineffective and unworkable; in the Board's words, "it was apparent to the school system that the program did not operate as designed... ." Among other things, the 2003-2004 night program lacked subject matter instruction and there was an administrative problem regarding the transmission of a student's assignments between the regular teacher and the night program facilitator. *C.S.C.* I, 2006 WL 3731304 at *1.

Following a hearing on August 12, 2003, the trial court held, among other things, that (1) the Defendants were enjoined from implementing an evening alternative education program for middle school students because, as found by the trial court, the legislature had not authorized such a program; and (2) contrary to the Plaintiffs' assertions, the Defendants were not required to provide students with transportation to and from the sites of the evening alternative schools. *Id.* The trial court reserved ruling on the issue raised by the Plaintiffs as to whether the evening program, as designed by the Defendants, conflicted with minimum state requirements. *Id.*

As found and stated by the trial court, "[c]ounsel for the parties worked together during the 2003-2004 school year to address objections to and problems with this newly implemented program. As a result of the collaborative effort, a new program was instituted for the 2004-2005 school year..." Because the 2003-2004 night program had been abandoned in favor of the new program, the parties reached a partial settlement agreement regarding the earlier program. *C.S.C.* I, 2006 WL 3731304, at *1. The agreement set forth various remedies available to any class member adversely affected by the 2003-2004 night program. *Id.* The trial court found the following as regards the settlement agreement:

> On April 4, 2005, counsel announced that a settlement had been reached regarding the 2003-2004 NAP [Night Alternative Program]. An order approving this settlement was entered on April 11, 2005. In the agreed settlement entered April 4, 2005, it was acknowledged that the NAP for 2003-2004 did not meet Knox County Schools' expectations for alternative education. It was further acknowledged that some students who attended the NAP did not receive prescribed courses and other students did not receive credits. Because the 2003-2004 school year program was no longer in place it was acknowledged that it was not in the best interest of either party to litigate to determine if the 2003-2004 program would withstand judicial inquiry.
>
> While not admitting the 2003-2004 NAP program was inadequate, the defendants, nevertheless, agreed to provide appropriate services to any student who attended the NAP who did not receive prescribed courses and other students who did not receive credits. Additionally,

certain remedies were identified as being appropriate to those students and were set forth in the agreement. Details with regard to the implementation of this "partial agreed settlement" were to be negotiated by the parties and memorialized in side agreements, which were also filed. In one such agreement dated March 1, 2005, defendants agreed that plaintiffs were the prevailing parties "in this settlement" and attached a letter from [Plaintiffs'] attorney Brenda McGee to [Defendants'] attorney Martha McCampbell dated March 2, 2005, in which Mr. Rivkin and Ms. McGee agreed to waive attorneys' fees (but not the cost of litigation) to date. This agreed settlement was approved by the Court by order dated April 11, 2005.

In August 2004, the Plaintiffs filed a motion for a temporary injunction, alleging that the Defendants' 2004-2005 night alternative education program violated state and federal law (1) by offering less than 12 hours of instruction per week; (2) by failing to provide instruction in all of the core courses; (3) by failing to provide support services, such as counseling, anger management, and other psychological services; and (4) by failing to offer a curriculum focused on reforming the students' behavior. *C.S.C.* I, 2006 WL 3731304, at *2. On April 7-8, 2005, the trial court held a hearing to address the Plaintiffs' challenges to the 2004-2005 night program. The trial court found in favor of the Defendants as regards the challenges to the 2004-2005 night alternative education program, and this court affirmed the trial court's decision in *C.S.C.* I. *Id.*

On January 27, 2006, the Plaintiffs filed a petition for attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and Tenn. R. Civ. P. 54.04. Plaintiffs' attorney Dean Hill Rivkin submitted an affidavit documenting his total fees in the amount of $93,630 (312.1 hours at $300 per hour). Plaintiffs' attorney Brenda McGee submitted an affidavit documenting her total fees in the amount of $53,370 (237.2 hours at $225 per hour). The fees affidavits were supported by affidavits of Knoxville attorneys attesting to their reasonableness. Neither the reasonableness of the Plaintiffs' attorneys' hourly rates, nor the number of hours expended, was challenged by the Defendants as inappropriate or excessive.

On April 25, 2006, the trial court entered a judgment in favor of the parent of one of the class members, K.M., for damages resulting from "the failure of the Defendants to offer K.M.'s son any program of alternative education and the fact that K.M.'s son, who turned 18 in October, 2004, would have been permitted by his high school to graduate in May, 2005, if he had not been expelled."

On May 2, 2006, the trial court entered a judgment awarding the Plaintiffs $45,000 of the requested $147,000 in attorney's fees; $2,971 in out of pocket expenses; and court costs.

## II. Issue Presented

The Defendants appeal, raising the issue of whether the trial court erred in awarding attorney's fees and court costs to the Plaintiffs.

## III. Standard of Review

The attorney fee provision in 42 U.S.C. § 1988 states that a court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." *See Consolidated Waste Systems, LLC v. Metropolitan Gov't of Nashville & Davidson County*, No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *45 (Tenn. Ct. App. M.S., June 30, 2005). "As the language of the statute makes clear, the determination of whether to make an award of fees, as well as the amount of such fees, lies within the discretion of the trial court. A trial court's decision to grant or deny fees is reviewed for abuse of discretion. *Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 357 (6th Cir. 2004). That discretion is limited, however, by the requirement that only a prevailing party may qualify for a fee award. Additionally, if it is determined that a party meets the prevailing party requirement, fees should be awarded "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983)." *Id.*

In *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001), the Tennessee Supreme Court provided the following guidance regarding the abuse of discretion standard:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

An abuse of discretion occurs when the lower court's decision is without a basis in law or fact and is, therefore, arbitrary, illogical, or unconscionable. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000); *Denver Area Meat Cutters and Employers Pension Plan v. Clayton,* 209 S.W.3d 584, 590 (Tenn. Ct. App. 2006).

## IV. Analysis

The Defendants argue that the trial court erred in finding that the Plaintiffs were "prevailing parties" in the litigation because their success in pursuing some of their claims was limited, particularly after the partial settlement agreement was executed and approved by the trial court. We

hold the trial court did not abuse its discretion by holding that the Plaintiffs obtained sufficiently successful results in the overall litigation to achieve "prevailing party" status under 42 U.S.C. § 1988. Recently, this court, addressing the same issue as presented here, discussed at length the "prevailing party" concept as interpreted and developed by the United States Supreme Court in the case of *Consolidated Waste Systems, LLC v. Metropolitan Gov't of Nashville & Davidson County*, No. M2002-02582-COA-R3-CV, 2005 WL 1541860 (Tenn. Ct. App. M.S., June 30, 2005). The *Consolidated Waste Systems* court noted that a plaintiff is a "prevailing party" when actual relief on the merits of his or her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff, and further stated as follows in relevant part:

> The meaning of the term "prevailing party" has been the subject of a number of opinions by the United States Supreme Court. Recently, the Court has indicated that the meaning is relatively clear. In *Buckhannon Board and Care Homes, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835 (2001), the Court ruled that a "prevailing party" does not include one who fails to secure a judgment or court-ordered consent decree, even though the desired result of the lawsuit is achieved because of a voluntary change in the defendant's conduct, thus declining to adopt the "catalyst" theory. In that opinion, the Court made it clear that to be a prevailing party, one must receive at least some judicially-sanctioned relief on the merits of his or her claim. 532 U.S. at 600-604, 121 S.Ct. at 1838-40.
>
> Describing "prevailing party" as a term of art, the Court referred to the Black's Law Dictionary definition: "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded ... Also termed successful party." A prevailing party is one who has been awarded some relief by the court. 532 U.S. at 603, 121 S.Ct. at 1839.
>
>        *          *          *
>
> This threshold requirement has long existed. "Only where a party has prevailed on the merits of at least some of his claims ... has there been a determination of the 'substantial rights of the parties,' which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney." *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987 (1980). In *Hensley,* the Court sought to clarify the standard where the plaintiff achieves only limited success. *Hensley,* 461 U.S. at 431, 103 S.Ct. at 1938. The Court defined a prevailing party as one who succeeded "on any significant issue in litigation which achieves

some of the benefit the parties sought in bringing suit." *Id.*

In *Texas State Teachers Ass'n. v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493 (1989), the Court resolved a split among the circuit courts and rejected the standard requiring that a party succeed on the "central issue" in the case and achieve the "primary relief sought." 489 U.S. at 791, 109 S.Ct. at 1493. Instead, the Court reaffirmed the *Hensley* standard. The Court also reiterated that where the claims arise from a core set of facts and involve related theories of law, the degree of success the plaintiff attains is relevant to the size of the fee award, *i.e.,* whether the award is reasonable, not to the eligibility for an award, *i.e.,* whether the plaintiff is a prevailing party. 489 U.S. at 790, 109 S.Ct. at 1492; *see also Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 574 (1992). The *Texas Teachers Ass'n* case established an exception where the plaintiff's success can be characterized as "purely technical or *de minimis;*" in that situation, the plaintiff is not a prevailing party. *Texas State Teachers Ass'n,* 489 U.S. at 792, 109 S.Ct. at 1494. However, *Farrar* clarified that a party who is awarded only nominal damages is a prevailing party because prevailing party status does not turn on the magnitude of the relief obtained. *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574.

\*          \*          \*

Indeed, the Supreme Court has stated, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n,* 489 U.S. at 792-93; 109 S.Ct. at 1494. It has also held that the relief granted must "affect the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 203 (1988).

"[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 111-12, 113 S.Ct. at 573. (citations omitted).

While a plaintiff who obtains only a declaratory judgment in his or

-7-

her favor may qualify as a prevailing party, entry of such a judgment does not automatically compel that result. *Rhodes,* 488 U.S. at 3, 109 S.Ct. at 203. Rather, the question is whether the judgment produces some action or cessation of action by the defendant or otherwise affects the behavior of the defendant toward the plaintiff. "A declaratory judgment, in this respect, is no different from any other judgment." 488 U.S. at 4, 109 S.Ct. at 203.

*Consolidated Waste Systems, LLC*, 2005 WL 1541860, at *46-47.

In the present case, the Plaintiffs achieved significant judicially-sanctioned relief on the merits of some, but not all, of their claims. Initially, the Plaintiffs obtained temporary injunctive relief, and further obtained class certification. Later, the Plaintiffs obtained much of what they were seeking – an alternative education program for students expelled or suspended for more than ten days that reasonably met the students' educational needs – through their efforts in negotiating and executing the partial settlement agreement. This agreement received a judicial imprimatur by the trial court's order approving it, and the "side agreement" to the settlement, executed by the parties, specifically provided that "the defendants agree that the plaintiffs are the prevailing parties in this settlement." Finally, some of the Plaintiffs were successful in recovering damages for their expenses in obtaining substitute education such as private schooling for their children.

The Defendants argue that their decisions to implement and later improve the alternative education programs for Knox County students were purely voluntary and not caused by Plaintiffs' lawsuit. The Defendants state in their brief that "[i]n January 2003, three months before this lawsuit was filed, the Knox County Board of Education directed the administration to formulate a plan to provide alternative school services suspended or expelled from their regular school program...The school system voluntarily implemented an alternative school program for the 2003-2004 school year." This argument has no evidentiary support in the record. The sole citation to the record in support of the Defendants' assertion that the changes were voluntarily made is to a filed response in which the Defendants refer to a portion of a deposition that is not included in the record. In any event, this factually-driven argument was considered and rejected by the trial court, and we find no error in its doing so.

Even though the Plaintiffs qualify as "prevailing parties" under the statute, they may not be entitled to an award of attorney's fees if such an award would not be reasonable. *Consolidated Waste Systems*, 2005 WL 1541860, at *49. "The nature of relief obtained is relevant to the amount of fees awarded and to the exercise of discretion by the trial court in determining that amount. *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574. That is because the court must consider the relationship between the extent of success and the amount of the fee award. *Hensley,* 461 U.S. at 438, 103 S.Ct. at 1942. The degree of overall success is an important, or even the most critical, factor in determining the reasonableness of a fee award. *Id.; Texas Teachers Ass'n.*, 489 U.S. at 793, 109 S.Ct. at 1493-94; *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941." *Id.*

The Defendants argue that, considering the agreement of the Plaintiffs' attorneys to waive their fees "to date," made on March 2, 2005, and the subsequent lack of success of Plaintiffs in their challenge to the 2004-2005 night alternative program, the only reasonable fee in this case is no fee at all. The Plaintiffs counter that the trial court properly considered these mitigating factors and that the decision to award only 30% of the attorney's fees incurred by the Plaintiffs was within the trial court's reasonable discretion.

In the present case, the trial court entered a thorough, thoughtful memorandum and order on its fee award decision. The trial court explained its decision as follows:

> In this case, the plaintiff class prevailed on numerous individual cases seeking injunctive relief as well as on individual claims for damages. Additionally, class counsel was actively involved regarding the 2003-2004 NAP. Further, the parties themselves designated plaintiffs as the prevailing party when the order approving the agreed settlement for the 2003-2004 NAP program was entered. The Court would not hesitate to award fees taking into account the lack of success of the plaintiff class in regard to the 2004-2005 NAP.
>
> However, per the so-called side agreement attached to the partial settlement of claims to the 2003-2004 school year, class counsel expressly waived fees up to March 2, 2005. From that point forward, even though the plaintiff class had been designated as a prevailing party, the Court nevertheless has to consider the reasonableness of the fees expended after March 2, 2005, giving consideration for the degree of success of the class on the claims asserted.
>
> No case has been cited and the Court has found none based on comparable facts where the class has been deemed the prevailing party and counsel has waived fees to a date certain. In that sense, this case is most unique. ...
>
> In reviewing the fee petition, it is clear to the Court that not all of the services of plaintiffs' counsel prior to March 2005 related solely to the 2003-2004 school year. Much of the time prior to March 2, 2005, involved preparation for the hearing in April 2005 concerning the 2004-2005 NAP program. Additionally, it is also clear that some of the time entries subsequent to March 2, 2005, relate to obtaining court approval of the settlement regarding the 2003-2004 NAP program and the implementation of remedies related to it. These factors further add to the complexity of the resolution of the fee issue.

*       *       *

[I]n some instances it is readily discernible as to what particular "claim" the time is expended. In others it is not so clear and in some circumstances time could have been expended on both the 2003-2004 and the 2004-2005 school year claims.

\*                    \*                    \*

The Court's ability to exercise its discretion in this matter is compounded by the factors set forth above. The Court must consider counsels' waiver of a part of their fee, the overlap of some activity, and the fact that plaintiffs achieved only limited success and arguably no success regarding the 2004-2005 NAP program.

*The Court must also be cognizant of the fact that*, as pointed out by plaintiffs' counsel on more than one occasion, *the alternative education program was enacted by the legislature in 1984 and Knox County had done little to implement the requirements of that program prior to the institution of these cases.* The Court also observed during the course of this litigation that while the Board of Education did strive greatly to implement the current programs there was also an element of resistance indigenous to any litigation. In summation, the Court cannot say that plaintiffs' counsels' efforts did nothing to bring about a judicially sanctioned change in the legal relationship of the parties. Indeed, even during the trial in April 2005 school board witnesses testified as to the ongoing efforts to upgrade and improve the NAP program.

Taking all of the aforementioned factors into consideration, the Court is of the opinion that class counsel should be entitled to an aggregate fee of $45,000.00 plus $2,971.00 for out of pocket expenses. Court costs are taxed to defendants.

(Emphasis added).

As the italicized portion of the trial court's order indicates, it is clear that the efforts of the Plaintiff class members and their counsel have contributed to the public interest through this litigation. As we stated in *Whalen v. Hutchison,* No. E2001-01404-COA-R3-CV, 2002 WL 489558, at \*2 (Tenn. Ct. App. E.S., April 1, 2002), "The legislative purpose behind the Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, as amended, is to encourage private enforcement of the public interest. It is to be 'liberally construed to achieve the public purposes involved in the congressional enactment.'" As the trial court found, the legislature enacted the alternative education program

requirements in the mid-1980s[2] and Knox County had done "little to implement the requirements of that program" prior to the institution of this action. Further, as already noted, the trial court only awarded 30% of the total requested fees, indicating that it did consider the mitigating factors to Plaintiffs' success, as discussed above.

In *Consolidated Waste Systems*, this court noted the trial court's broad discretion in awarding attorney's fees, and the reasons for affording that broad discretion, as follows:

> A trial court has broad discretion in deciding whether to award fees to a prevailing party and the amount of fees that are reasonable. "It is central to the awarding of fees under § 1988 that the district judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 946 (1989). The trial court is usually in the best position to make fee award decisions because it has more closely observed and gained a greater understanding of the litigation, the lawyering, and the results. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1491. "The [trial] court is in the best position to ascribe a reasonable value to the lawyering it has witnessed and the results that lawyering has achieved." *Wilcox,* 42 F.3d at 555.

2005 WL 1541860, at *50. Similar discretion is afforded to the trial court in awarding court costs:

> [O]n appeal Plaintiff must show extraordinary circumstances to overcome the presumption in favor of the discretionary purview of the Trial Court in taxing the costs of the Trial Court. "Tenn.Code Ann. § 20-12-119 and Tenn.R.Civ.P. 54.04 give trial courts the authority to tax the costs incurred in the trial court. These determinations are within the trial court's discretion, and they will be reviewed on appeal only under very extraordinary circumstances." *Rogers v. Russell,* 733 S.W.2d 79, 88 (Tenn.Ct.App.1986).

*LeBrun v. Elmore,* No. E1999-01523-COA-R3-CV, 2000 WL 224628, at *6 (Tenn. Ct. App. E.S., Feb. 28, 2000). We hold that the award of attorney's fees and taxing of court costs was a reasonable exercise of the trial court's discretion, considering the totality of the litigation and applicable authorities.

---

[2]The pertinent statute, now located at Tenn. Code Ann. § 49-6-3402(a), was originally enacted in 1984. In 1986, the General Assembly amended it to require that "[a]lternative schools shall be available for students in grades seven (7) through twelve (12) who have been suspended or expelled as provided for herein."

## *V. Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.  The Plaintiffs request an award of attorney's fees incurred in this appeal.  Exercising our discretion, we decline this request and hold that each side should be responsible for paying their own attorney's fees on appeal. Costs of appeal are assessed to the Appellants, Knox County Board of Education and Dr. Charles Lindsey, Superintendent.

_____

SHARON G. LEE, JUDGE